MARSHALL v. PETTINGELL-ANDREWS CO.

(Circuit Court, D. Massachusetts. May 7, 1907.)

No. 201.

PATENTS—INVENTION—INSULATING LININGS.

The Marshall patent, No. 784,695, for an insulating lining consisting of a paper tube held in the metallic shell by its resiliency and yet easily removable, claims 5 and 9 are void in view of the prior art, as involving merely the substitution of paper as an insulating material for vulcanized fiber previously used, with no change except the minor advantage of removability which results from the fact that paper is slightly more compressible, an advantage not involving invention, and also because both claims are devoid of patentable novelty in view of the Hart "Diamond H" switchcap which preceded the alleged invention of the Marshall patent, and had a paper lining similar in use, purpose, and function.

In Equity.

Edward P. Payson, for complainant.
Howson & Howson and Hubert Howson, for defendant.

BROWN, District Judge. The bill charges infringement of letters patent No. 784,695, issued March 14, 1905, to Norman Marshall, for an insulating lining. The claims in suit are:

"(5) An insulating-lining consisting of a paper tube having its diameter reduced for a portion of its length, substantially as described."

"(9) The combination with a metallic shell, of an insulating-sleeve consisting of an elastic, compressible paper tube held in frictional engagement with the shell by its own resiliency."

Each claim uses the term "paper tube," upon which are based the principal distinctions from the prior art.

The patent to Painter, No. 718,378, dated January 13, 1903, shows an insulating lining of the same form. It is contended by the complainant that this insulator was constructed of material such as fiber, hard rubber, etc., which does not possess the peculiar properties of a paper insulator in respect to frictional engagement with the shell. It is established that, as an insulator, paper was a well-known equivalent for fiber.

The defendant contends that the patent in suit shows merely the substitution of paper for vulcanized fiber. The complainant does not deny that, considered merely as an insulating material, this is true, but insists that the insulating lining of the patent in suit is differentiated from the prior art by a—

"new function, depending upon a previously unused capability of paper, absent in vulcanized fibre, to exercise under atmospheric changes a slight but contin-

.uous grip upon a metal shell, ensuring always its normal retention, but per-.mitting its easy withdrawal, as desired."

It is not denied by the defendant that the substitution of paper, which is more flexible than vulcanized fiber, permits a closer adherence of metallic shell and insulating lining.

The complainant offers evidence to show that commercially it was desirable that the lining should be so securely attached to the metallic shell that it would not drop out, and yet that it should not be attached so firmly as not to be easily removable. Because of its compressibility and resiliency, a paper tube may be somewhat larger in diameter than the metallic shell. Therefore, when the paper lining is pressed firmly into the shell, it remains so closely attached that it will not drop out, and yet is capable of being readily withdrawn.

The advantages which the specification of the patent in suit claims over vulcanized fiber are (1) that the paper lining will be retained in the shell at all times and under all conditions, without danger of dropping out, and without offering undue resistance to its removal; and (2) a reduction in the cost of manufacture.

The defendant contends that cheapness is the only true reason for the adoption of paper linings, and that the other advantage is of very minor importance, and is merely a "talking point." In support of this, reference is made to the testimony of complainant's witness, Mr. H. R. Sargent, the engineer of wiring supplies of the General Electric Company, complainant's largest customer in the use of these linings, who testified, in reply to the cross-interrogatory:

"Cross-Int. It is a fact, is it not, that the only real reason why your company has adopted the use of these so-called elastoid paper linings is that they are cheaper than the vulcanized fiber linings?
"Ans. It is."

The defendant also refers to a statement by Marshall in the specification of his letters patent No. 750,873, dated February 2, 1904:

"As heretofore manufactured insulating-sleeves of this shape have usually been formed from sections of fiber tubing by subjecting the tube-section to the action of dies which draw down the tube to a smaller diameter for about one-half its length. Sleeves thus formed meet the structural requirements for a satisfactory socket-lining; but owing to the comparative high cost of the fiber tubing and the waste in cutting the same into sections the sleeves or linings formed by this method are comparatively expensive."

On the other hand, Mr. F. E. Cabot, secretary of the Boston Board of Fire Underwriters, and chairman of the Electrical Committee of the National Board of Fire Underwriters, testified as follows:

"Int. What is the practical reason that paper linings have superseded the hard fiber linings?
"Ans. Because they overcame the objection which was constantly found to the fiber linings, that they did not remain in position when the socket was taken apart, either to be refinished or attached to a fixture.
"Int. What occasions are there for removing such linings from the shell?
"Ans. More particularly when the shells are to be refinished; that is, to have the outer surface retreated so as to correspond with the fixture to which they are to be attached.
"Int. Is there any practical difference between the fiber linings and the paper linings, as to their becoming fixed in the shell, so as not to be removable?

"Ans. The fiber linings sometimes, though not invariably, are stuck to the outer shell so that they are not easily removable."

There is testimony showing that mechanical devices were used to prevent the fiber lining from dropping out of the shell. Mr. Cabot states also:

"It is a requirement of a successful commercial socket that the lining should be easily removable."

"As a commercial article, a socket without a removable lining is not as salable as one with a removable lining."

"It was the usual commercial practice to put a mark on boxes containing sockets with removable linings."

It has not been made to appear that it was impractical to make a fiber lining of such size that, when introduced into the shell, it would not drop out. On the contrary, the evidence shows that nonremovable fiber linings were well known. The substantial feature of the patented lining, therefore, must be that it shall be easily removable, and this, so far as appears from the testimony, is desirable principally in case it is desired to refinish the shell.

The defendant contends that the difference from the lining of the prior art is simply a question of degree; that vulcanized fiber is paper that has been chemically treated to harden it; that it is thus rendered mechanically stronger, but as a substance less compressible. But it is said that the paper which the defendant uses has been made quite hard by mechanical compression. It is said that the case does not involve even the substitution of one material for another, but involves simply the substitution of material in one condition of relative softness for the same material in another condition—one of relative hardness.

Claim 5 is clearly too broad, if read to cover the substitution of paper for fiber without a limitation to the relation between the lining and the shell. The mere mechanical advantage of removability, if this be the invention, is not enough to give the complainant the sole right to use paper as an insulating lining.

Claim 9 seems to state more correctly what the complainant alleges to be the invention; for it is only when the insulating lining is made of such size in relation to the metallic shell that it will be held firmly by its own resiliency, and yet be removable, that the complainant's alleged invention is employed. If removability is of consequence principally when refinishing is desired, and only in a comparatively small number of cases, the patent cannot be construed to cover the use of a well-known insulating equivalent for the old fiber in the very large number of cases where removability is of no practical consequence.

The defendant further contends that the capacity of a paper tube or shell to stick to another tube or shell which it was intended to fit has been known ever since the patents to Powers, No. 156,591, and to Van Vechten, No. 185,598; in fact, ever since pill boxes were invented.

I am of the opinion that the substitution of paper for vulcanized fiber cannot be regarded as a patentable invention even if, by reason of the greater compressibility of paper, the lining can be made some-

what larger and more closely fitting than the fiber lining.  Mr. Livermore, defendant's expert, says:

"It is a matter of common knowledge that a paper tube or article such as the tubular flange of the head shown in the Van Vechten patent may be crowded into a correspondingly shaped recess, such as the end of the cylindrical body portion of the box sufficiently tightly to remain held in the recess by the frictional engagement due to the resiliency of the paper, and consequently the construction set forth in the Van Vechten patent exhibits all of the characteristics and capabilities of paper material which are referred to in the Marshall patent sued upon as discoveries of Marshall, and nothing but intelligent observation would have been required on the part of persons familiar with the paper articles and their manufacture as known for years prior to the time of the Marshall patent sued upon to ascertain that paper possessed the characteristics referred to in the Marshall patent, and would, if employed as the material for making the molded linings of the Painter patent, produce an insulating lining identical with that set forth in the Marshall patent sued upon."

Complainant's counsel lays stress upon the newly utilized self-holding function of the paper tube; but it is difficult to see wherein there is any novelty in respect to this function over the ordinary paper pill box.  It is a tax upon credulity to believe that the dominating idea in substituting paper for the much more expensive fiber was not the use of a cheaper material, but was to use a material which would hold better.  But it is said that there was a problem of maintaining two parts in contact, due to the fact that with atmospheric changes the parts do not contract and expand equally.  If this was the sole problem, it was a matter of common knowledge that a more flexible and more compressible material would obviate this objection; and the search among insulating materials for such a substitute and the finding of paper, a well-known insulator, does not seem to amount to invention.

The views of Mr. Livermore, defendant's expert, are in accordance with the decisions of the Circuit Court of Appeals in this circuit.  In L. E. Waterman Co. v. Lockwood, 125 Fed. 497, 60 C. C. A. 333, a similar mechanical problem was involved, that of making a close-fitting cap for a fountain pen.  "Elastic pressure" was relied upon as a feature, and a "tapered interior member," not differing substantially from complainant's sleeve with the "diameter reduced for a portion of its length," was shown, and "an elastic progressive wedge union joint" was an element claimed; yet it was held that this involved "merely mechanical skill, and in no degree inventive faculty."  This apparently was also the view of the Circuit Court (L. E. Waterman Co. v. Johnson [C. C.] 123 Fed. 303, 305), and of the Circuit Court of the Second Circuit (L. E. Waterman v. Forsyth [C. C.] 121 Fed. 103).  So, in Perry v. Revere Rubber Co., 103 Fed. 314, 315, 43 C. C. A. 248, a distinction was drawn between old forms of rigid coupling and a compressible coupling for a steam joint packing.  It was said:

"To make a coupling-pin solid and incompressible for use in an incompressible tubing or packing, or hollow and compressible for use in a compressible tubing or packing, does not involve inventive thought."

See, also, Rubber-Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L. Ed. 410.

It is also urged that the discovery that paper tubing could be so worked as to form articles formerly made of fiber was the result of a novel and inventive thought. The special means of manufacture are not covered by the claims, and there is no process claim. It is not contended that the claims are limited to a paper tube having its diameter reduced for a portion of its length by dies.

This matter, though referred to in the specification, is outside the claims. Furthermore, there is no evidence which shows that mechanically hardened paper was not as suitable for the Painter process of making insulating lining shown in letters patent No. 718,-378, as was vulcanized fiber or hard rubber. The difference between vulcanized fiber and heavily calendered paper board is not so great as to make it an inventive thought to try the same process on the latter as was used on the former. The exhibits show practically no difference in the result of the pressure of the dies upon the materials; and no evidence of experimentation is offered to show that difficulties had to be overcome in working hard paper board by dies made for fiber, hard rubber, etc.

In General Electric Co. v. Yost (C. C.) 131 Fed. 874, affirmed, 139 Fed. 568, 71 C. C. A. 552, it was held that the Painter process was old in making cartridge shells. That the dies of the complainant are of such length that the tube is confined substantially throughout its entire length to prevent buckling does not seem more than such variation of Painter's dies as would occur to the ordinary mechanic.

The defendant also contends that the patent in suit is anticipated by the one-piece paper lining of the Hart "Diamond H" switch-cap. This was a switch-cap of metal completely lined with paper. The articles are closely like the complainant's in respect to use, purpose, and function. They are made by dies which compress the lining in the metal under great pressure. It is apparent from the exhibits that the paper insulating lining is easily removable, and can be replaced within the metallic shell so that it retains its place by its own resiliency. I am of the opinion that the testimony of the defendant satisfactorily proves the priority of this switch-cap.

The relevancy of switch-caps as anticipations seems to be recognized by the complainant, by the introduction in evidence of patents showing that fiber linings of switch-caps were often attached mechanically. It is said, however, that it was not the intention of the manufacturer that the switch-cap lining should be easily or readily removed, and that:

"The slight frictional grip of the paper which is the soul of the invention and of its use for socket linings is designedly destroyed and not intended to be utilized in the strong relentless grip of the paper cap linings."

But we find in the switch-cap the combination of a metallic shell, an insulating-lining of elastic compressible paper held in frictional engagement with the shell by its own resiliency. Mr. Hart had clearly shown a perception of the advantages of the substitution of paper for fiber. He had shown the use of dies to draw his paper insulating lining into its required shape. While he makes his lining from

a disc instead of by drawing down a tube and in cup shape instead of in tube shape, there is such resiliency of the tubular walls of his insulating material that, when the lining is removed from the metallic cap and replaced, it adheres by virtue of the resiliency of the paper. While it is said by the complainant that removal was not contemplated, Mr. Hart testifies that, having previously lined his switch-caps with paper glued in, he made the change because a one-piece liner was better, more convenient of insertion, and avoided the necessity of gluing or fastening in any other way than by the resiliency of the paper; that it could also be removed if it were necessary to refinish the cap; and that it stuck in its place by its elasticity or resiliency.

It would seem as desirable that an insulating lining should adhere to the switch-cap while it is being fixed to the wall as that it should adhere to the socket when it is fixed to the lamp bracket, and as desirable and as useful that the insulating lining should be removable from the switch-cap, if one wishes to refinish it, as that the lining should be removable from the socket if one wishes to refinish the socket. Mr. Hart says specifically that he had in mind the matter of removability; and, whether he did or not, he has produced an article which so nearly resembles the lining of the patent in suit as to render claims 5 and 9 devoid of patentable novelty.

Complainant's expert, William H. Walker, testifies as follows:

"You state that the Diamond H switch-cap and the paper-lined lamp sockets are alike in three respects. In the first of these, namely, that they are both electrical devices with metallic shells lined with paper for the purpose of insulation, I agree. I can also agree with the second statement in so far that the linings of both stay in place by reason of the resiliency of the paper, but I cannot agree with the implied statement that this resiliency is exercised in both devices in the same way."

It must be admitted that the Hart switch-cap was a complete solution of the problem of making a paper lining that would stay in. It is criticised on the ground that the lining is inserted by a machine, and that Marshall used a lining which can be inserted by hand and not by a machine. The case does not call for refinements as to the mode in which the shell and paper co-operate in varying atmospheric changes. The simple fact is that paper, by reason of its compressibility, can be pushed in and will stay in exactly as a cork, by reason of its compressibility and resiliency, will stay in when pushed into a bottle. It is merely the familiar mechanical result which follows when a compressible substance is thrust into a tube which is somewhat smaller.

Upon the evidence I am of the opinion that the principal reason why paper has superseded fiber is on account of its cheapness, and that, while the use of paper involves the minor advantage of a closer adherence to the shell, this is clearly insufficient to support claims for the use of compressible paper tubes as an insulating lining, and does not amount to patentable invention. While the practical importance of the feature of removability seems much exaggerated, yet, if it be conceded that it is of some commercial importance, this is not sufficient to support the patent. I find that both claims are

void, in view of the prior art, since they involve merely the substitution of one well-known insulating material for another very similar material, with no change except the minor advantage of removability, which results from the fact that paper is slightly more compressible than fiber, an advantage not involving invention; and also because both claims are devoid of patentable novelty in view of the Hart "Diamond H" switch-cap, which preceded the alleged invention of the patent in suit.

The bill will be dismissed.