## MARSHALL v. PETTINGELL–ANDREWS CO. ·

(Circuit Court of Appeals, First Circuit. September 25, 1908.)

No. 754.

1. PATENTS (§ 165*)—CONSTRUCTION OF CLAIMS.
　　Where one claim of a patent specifically names two elements, and another claim specifically names these two elements and in addition thereto a third element, it must be presumed that the patentee intended to limit the claims to the elements enumerated.
　　[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 328*) — INVENTION — SUBSTITUTION OF MATERIALS—INSULATING LININGS.
　　The Marshall patent No. 784,695, for an insulating lining for the metallic shell of an incandescent lamp socket consisting of a paper tube held in the metallic shell by its resiliency and yet easily removable, claims 5 and 9, which are broad claims, which do not include as an element a change in form from the linings of the prior art, are void as merely involving the substitution of paper as the insulating material for the fiber tubing previously used, the only advantage being its greater compressibility and resiliency, which were well-known qualities, and also because such broad claims are devoid of patentable novelty in view of the earlier Hart "Diamond H" switch cap, which had a paper lining similar in use, purpose, and function.
　　[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 153 Fed. 579.

Sherman L. Whipple (Whipple, Sears & Ogden, on the brief), for appellant.

Hubert Howson (Howson & Howson, on the brief), for appellee.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

COLT, Circuit Judge. The Marshall patent, No. 784,695, issued March 14, 1905, is for an insulating lining for the outer metallic shell of an incandescent lamp socket. Prior insulating linings were made of hard fiber. The Marshall lining is made of paper.

The present bill is brought for infringement of claims 5 and 9 of the Marshall patent:

　"(5) An insulating-lining consisting of a paper tube having its diameter reduced for a portion of its length, substantially as described."

　"(9) The combination with a metallic shell, of an insulating-sleeve consisting of an elastic, compressible paper tube held in frictional engagement with the shell by its own resiliency."

The Circuit Court held these claims invalid and dismissed the bill. The ground of the decision was that the invention covered by these claims involved merely the substitution of one well-known insulating material for another well-known insulating material, with no change in result except of a minor character.

The Marshall invention will be better understood if we first con-

sider the prior hard fiber lining shown in the Painter patent No. 718,-378, and note the difference between the two linings.

The following drawing from the Painter patent illustrates the outer metallic shell of an incandescent lamp socket and the prior hard fiber lining:

In this cut the upper and lower figures show the two parts of the shell, and the middle figure the lining ready to be inserted in the shell. The shell is composed of a piece of tubular metal of different diameters—that is, about half the length of the tube is of a smaller diameter than the other half—and a shoulder is formed where the two parts of different diameter unite. The lining is made of hard fiber, and corresponds to the form of the shell; that is, it is a tube of different diameters, with a shoulder which unites the part of larger diameter with the part of smaller diameter.

The Painter lining was made by taking a piece of hard fiber tubing about the length of the shell, and of a proper diameter to fit within the larger end of the shell, and by the action of dies reducing or compressing the proper portion of the length of the tube to the smaller diameter required to enable it to fit within the smaller part of the shell.

The Painter lining met the substantial requirements of a satisfactory lining, and went into extensive commercial use. It was, however, open to some not very serious objections.

It is desirable that the lining should be retained in the shell when the parts of the shell are taken apart for wiring or other purposes, and at the same time should be so held in the shell that it may be quickly and readily removed for the purpose of refinishing the shell.

The defect in the hard fiber lining was that it was liable to drop out of the shell when it was desirable it should be retained, or was liable to be held too firmly in the shell when it was desirable to remove it.

Marshall conceived the idea of remedying this defect by making the lining of paper, and having a portion of the periphery of the lining of greater diameter than the part of the shell within which it is to fit, so that as the lining is inserted in the shell this portion will be compressed and by its elasticity will maintain a moderate pressure on the shell, sufficient to prevent the lining from falling out and at the same time permit of its ready removal. It will be observed that the Marshall conception involved both a change in material and a change in form.

The method adopted by Marshall in making his lining was the same as the method shown in the Painter patent. Marshall took a piece of paper tubing about the length of the shell and of a proper diameter to fit within the larger end of the shell, and by the action of dies substantially the same as the Painter dies reduced a portion of the length of the tube to the smaller diameter required to enable it to fit within the smaller part of the shell; in other words, the dies were so shaped, just as in the Painter patent, as to give the lining when held by them the size and shape corresponding to the size and shape of the shell in which it is to be inserted. In submitting a paper tubing to this operation Marshall says he discovered that when the tube was released from the dies a portion of the reduced end at or near the shoulder would spring outward, thereby forming an elastic portion somewhat larger than the diameter of the part of the shell in which it was to fit.

A sectional view of this lining is illustrated in Fig. 4 of the Marshall patent:

FIG. 4.

In this figure the dotted lines show the shape of the lining when held by the dies, and the solid lines show the expanded or holding portion of the lining, which is of slightly larger diameter than the portion of the shell into which it is to fit.

It thus appears that the Marshall lining differs from the Painter lining in two particulars: First, it is made of paper instead of hard fiber; and, second, it has a new structural feature consisting of a raised or enlarged portion of its periphery, which is of larger diameter than the part of the shell within which it is to fit. In other words, the Marshall lining differs from the Painter lining not only in the material of which it is composed, but in its shape or form.

While this is the way Marshall says in his patent that he accomplishes the object of his invention, and while this is the form of lining specifically described in his patent and illustrated in the drawings, some of the claims of the patent cover a broader invention.

These claims do not limit the invention to a paper lining having the novel structural feature we have described, but they cover broadly a paper lining as distinguished from a hard fiber lining, or a paper lining which is held in frictional engagement with the shell by the resiliency of the paper.

The question of invention, therefore, arising under the claims of the Marshall patent, assumes a double aspect: First, was there invention in making a lining of paper with this new structural feature? And, second, was there invention in making a lining of paper with no change in its form? In the first case we have to support invention, not only the substitution of paper for hard fiber, but also a change in the form of the lining, while in the latter case we have only the substitution of paper for hard fiber.

The complainant in the present suit has seen fit to rely upon claims 5 and 9 of the Marshall patent, and the only question before us is whether these claims are void for want of invention.

To decide this question we must first determine the invention which is covered by these claims. Are the claims, or either of them, limited to the particular form of paper lining described in the patent, or do they cover broadly a lining made of paper instead of hard fiber?

The answer to this question requires a somewhat full consideration of the specification and claims of the Marshall patent.

The important parts of the specification may be stated as follows:

It is desirable that the insulating linings for incandescent lamp sockets should be retained in the shell when the parts are taken apart in wiring or for other purposes, and at the same time should be so held in the shell that they may be quickly and readily removed when desired, as for the purpose of refinishing the shell.

The linings which have gone into practical use have heretofore been made of insulating fiber tubing, and have been shaped to fit the shell as perfectly as possible. It has been found impracticable to make these linings fit the shell with just the requisite closeness to prevent the linings falling out, and still allow the ready insertion and removal of the linings. Moreover, if a lining under certain conditions properly fitted the shell, it would not do so under varying conditions as to moisture and temperature. The danger of these linings dropping out has been a recognized defect, and attempts to remedy this defect have not led to satisfying results.

The object of this invention is to provide a lining which will be retained in the shell at all times and under all circumstances, without danger of dropping out and without undue resistance to its removal.

"This I accomplish by forming an elastic insulating sleeve or lining having a portion of its periphery of larger diameter than the part of the shell within which it is to fit, so that as the lining is inserted in the shell this portion will be compressed and by its elasticity will maintain an effective holding pressure on the shell under all conditions. The lining may be made of any suitable insulating material having the requisite elasticity and adapted to be formed into the shape required to fit within the shells of the lamp sockets.

"I have discovered that elastic linings such as described" [that is, elastic linings having a portion of their periphery of larger diameter than the part of the shell within which it is to fit] "may be formed from paper tubing consisting of closely-wound layers of paper by the action of suitable-formed dies which draws down the tube for a portion of its length, and that the linings thus formed have the requisite elasticity and compressibility. I have also discovered that such paper linings will assume the proper shape when removed from the dies if the dies are shaped to give the lining when held by the dies a shape and size corresponding to the shape and size of the shell in which they are to be inserted. When the paper lining is released from the holding action of the dies, a portion of the reduced end will spring outward somewhat, thereby forming an elastic portion of a diameter somewhat larger than the diameter of the part of the shell in which it is to fit. When the lining is inserted in the shell, this elastic portion is compressed to the size originally given it by the dies, and by reason of its tendency to expand will hold the lining in place. By reason of my discovery of these peculiar characteristics of a paper tube when subjected to the action of the shaping-dies I am enabled to produce a lining having an elastic holding portion at materially less expense than the fiber linings have been produced, and thereby produce a more efficient and satisfactory lining and at the same time reduce the cost of manufacture."

164 F.—55

The patent then proceeds to explain the method by which this paper lining is produced, referring to the accompanying drawings of the patent.

"In forming the elastic lining from a paper tube the tube A, which consists of closely-wound layers of paper closely compacted together, is subjected to the action of the dies B C. I have discovered that a thin paper tube of the requisite diameter for a socket-lining may be drawn down for a portion of its length by the action of dies similar to those used in drawing down fiber tubing if the female die is so shaped that the tube is confined throughout substantially its entire length during the action of the dies. I thus confine the tube by so forming the female die B that the part of larger diameter extends to the end of the tube A when the shoulder B' begins to act on the tube. With the dies thus shaped the tube will be drawn to a smaller diameter a portion of its length as the female die is forced into the position of Fig. 2. The lining thus formed has an end portion A' of larger diameter and a portion $A^2$ of smaller diameter, and is of a size and shape when held by the dies to fit within the metallic shell S. (Shown in Fig. 5.) When the female die is removed and the lining removed from the male die, the reduced portion $A^2$ springs outward at $A^4$ near the shoulder $A^3$, as shown in Figs. 3 and 4, the dotted lines showing the shape of the lining when held by the dies. This portion $A^4$ forms an elastic and compressible holding portion, which is compressed as the lining is inserted into the shell, as shown in Fig. 5. This portion $A^4$ tends to expand owing to the elasticity of lining, and thereby holds the lining in place while admitting of its ready removal and insertion when desired."

It may be observed with respect to this specification that the patentee says that he accomplishes the object of his invention "by forming an elastic insulating sleeve or lining having a portion of its periphery of larger diameter than the part of the shell within which it is to fit, so that as the lining is inserted in the shell this portion * * * will maintain an effective holding-pressure"; and that he then proceeds to state how he has discovered that such a lining may be made of paper, and to show the method by which this is accomplished.

It would seem, therefore, that the substantial invention, as it lay in the mind of the inventor, was a paper lining having a slightly enlarged or holding portion which would produce a gripping action sufficient to prevent the lining from falling out, and at the same time permit its ready removal.

We come now to the claims of the patent, and we will first consider some of the claims which are not in issue:

"(1) An insulating-lining consisting of a tube having end portions of different diameters and having an elastic and compressible portion of greater diameter than the part within which it is to fit, substantially as described.

"(2) An insulating-lining consisting of a tube having end portions of different diameters and having an elastic integral holding portion, substantially as described."

These claims cover a lining having its end portions of different diameters, and with an elastic holding portion of greater diameter than the part within which it is to fit.

"(3) An insulating-lining consisting of an elastic compressible tube one end of which is of smaller diameter than the other, substantially as described."

This claim covers a lining composed of a compressible tube in which one end of the tube is of smaller diameter than the other end. It is, in other words, the old hard fiber lining made of a compressible material.

"(4) An insulating-lining consisting of a tube having an elastic compressible holding portion of greater diameter than the part within which it is to fit, substantially as described."

This claim covers a lining having a compressible holding portion of greater diameter than the part within which it is to fit. This lining may not have its end portions of different diameters as in claims 1 and 2.

"(6) An insulating-lining consisting of a paper tube having its diameter reduced for a portion of its length and having a portion of greater diameter than the part within which it is to fit, substantially as described."

This claim covers a lining composed of paper in which the paper tube is reduced a portion of its length, and which also has a holding portion of greater diameter than the part of the shell within which it is to fit. The subject-matter of this claim is the particular form of paper lining specifically described in the specification and shown in the drawings.

We come now to the consideration of the two claims in issue:

"(5) An insulating-lining consisting of a paper tube having its diameter reduced for a portion of its length, substantially as described."

This claim covers a lining composed of paper in which the paper tube is reduced a portion of its length, substantially as described; that is, a paper tube having its diameter reduced a portion of its length by means of dies. Since in the Painter patent the diameter of the tube was reduced by means of dies substantially the same as the Marshall dies, the lining covered by this claim is the same as the Painter lining except that it is made of paper instead of hard fiber. We cannot construe the words "substantially as described" in this claim as including by implication another element, namely, a holding portion, or "a portion of greater diameter than the part within which it is to fit," for that would make the claim read identically the same as claim 6. Where one claim of a patent specifically names two elements, and another claim specifically names these two elements and in addition thereto a third element, it must be presumed that the patentee intended to limit the claims to the elements enumerated. This rule of construction is founded upon sound reasoning and common sense, and is now too well established to be questioned.

"(9) The combination with a metallic shell, of an insulating-sleeve consisting of an elastic, compressible paper tube held in frictional engagement with the shell by its own resiliency."

This claim covers a metallic shell in combination with a lining which consists of a compressible paper tube held in frictional engagement with the shell. The end portions of this lining need not be of different diameters, and there need be no enlarged or holding portion of greater diameter than the part within which it is to fit; in fact, there is no limitation in this claim as to the shape or form of the lining. It may, perhaps, be presumed that the whole of this lining would be made a little larger in diameter than the interior diameter of the shell, so as to be retained therein by the resiliency of the paper, and that to accomplish this the dies would be made a little larger than those shown in the patent. Marshall, however, nowhere states in his patent either

that the lining is to be made larger than the interior diameter of the shell or that the dies are to be made larger than those he describes.

From this analysis of the claims of the Marshall patent, it follows that claim 5 must be construed as covering broadly a paper lining of the same form as the prior hard fiber lining, and having its diameter reduced by the same method as that employed by Painter; and that claim 9 must be construed as covering broadly a paper lining with no. limitations as to form but presumably made large enough to be held in frictional engagement with the shell. Stated in another way, the real invention contained in these claims is the substitution of paper for hard fiber in the lining of an incandescent lamp socket. That Marshall intended by these claims to cover broadly a lining made of paper instead of hard fiber is confirmed by the proceedings in the Patent Office as shown by the file-wrapper and contents. This construction of these claims has also been assumed by the witnesses in the case and by counsel in their oral arguments and printed briefs, and has likewise been adopted by the Circuit Court.

The substantial ground upon which the complainant rests the patentable novelty of claims 5 and 9 in issue is that Marshall made a discovery of the adaptability of paper to remedy the objections to the hard fiber lining. This alleged discovery was that paper possesses such properties of compressibility and resiliency that a paper lining made a little larger than the interior diameter of the shell may be pressed into the shell, with the result that it will be "retained in the shell at all times and under all conditions without danger of dropping and without offering undue resistance to its removal." These characteristics of paper, however, were well known. It may be said to be a matter of common knowledge that a paper stopper made a little larger than the neck of a bottle would be so held in the bottle that it would not fall out and at the same time be easily removable, and this in substance is all there is to this Marshall discovery. The recognition in the arts of these properties in paper and their utilization for the accomplishment of substantially the same results is exhibited in the old paper pill boxes shown in the Powers patent No. 156,591 and the Van Vechten patent No. 185,598.

Any possible claim, however, on the part of Marshall to this broad invention is fully met by the earlier paper lining of the Hart Diamond H. Switch Cap. These paper-lined switch caps and the paper-lined sockets of the Marshall patent in suit are alike in respect to their use ·and function. They are both electrical devices with metallic shells. Both these shells are lined with paper for the purpose of insulation. The linings in each case are held in place by the resiliency of the paper, and both are removable. The only difference is that the switch cap linings are crowded into the caps under great pressure and consequently are not so easily removable. It is manifest, however, that this comparatively unimportant difference simply in the degree of removability is insufficient to sustain Marshall's broad invention of a paper lining for an incandescent lamp socket.

It is true that the Marshall lining possesses the advantages of utility and cheapness, and that it has nearly supplanted in the market the hard fiber lining.

In cases where the question of patentability is involved in more or less doubt, these practical considerations are entitled to much weight, and they have frequently been held to turn the scale in favor of sustaining the patent. They cannot avail, however, in a case where the court is clearly satisfied that the broad conception underlying the patent did not involve inventive thought.

This case is limited to the consideration of the validity of claims 5 and 9 of the Marshall patent, and for the reasons given we must hold that these broad claims are void for want of invention in view of the prior art. The other claims of the patent are not before us, and we therefore express no opinion as to their validity. It may be observed, however, that the conclusion we have reached with respect to claims 5 and 9 is in no way inconsistent with the view that Marshall may be entitled to a patent for the particular way in which he says he solved the problem, as shown in the form of paper lining specifically described in the specification and illustrated in the drawings of his patent.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.

PUTNAM, Circuit Judge. I concur in the judgment, and also in the opinion of Judge COLT, subject to the following observation:

Judge COLT has carefully considered claims 5 and 9 from every point of view; but, as I am of the opinion that Marshall's invention necessarily involves a change in form as well as a change in material, I have not deemed it necessary to consider claims 5 and 9 except from the single point of view that those claims are void because they do not include the element of a change in form.