## MARSHALL v. BRYANT ELECTRIC CO.

### (Circuit Court of Appeals, First Circuit. March 1, 1911.)

### No. 906.

1. JUDGMENT (§ 654*) —MATTERS CONCLUDED—DECREE IN SUIT FOR INFRINGEMENT OF PATENT.

A decree rendered after full hearing dismissing a bill alleging infringement of a patent and all of its claims, upon which issue was taken by the answer, is a conclusive adjudication that the device in suit does not infringe any claim of the patent as between the parties or their privies, notwithstanding the fact that complainant voluntarily by notice restricted his proofs and contention to certain specified claims.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1165; Dec. Dig. § 654.*]

2. INJUNCTION (§ 26*)—RESTRAINING PROSECUTION OF SUIT—GROUNDS—PRIOR ADJUDICATION.

A manufacturer of an alleged infringing article, who became, in effect, a party defendant in a suit for the infringement by a stipulation on the record that it was defending the suit, is entitled to invoke the decree therein dismissing the bill on the merits as a ground for enjoining the prosecution of a suit subsequently brought by the complainant against another of its customers for infringement by sale of the same device.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24-49, 54-61; Dec. Dig. § 26.*

Restraining proceedings in federal courts, see note to Clapp v. Otoe County, 45 C. C. A. 591.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the Bryant Electric Company against Norman Marshall. Decree for complainant (169 Fed. 426), and defendant appeals. Affirmed.

Whipple, Sears & Ogden (Everett D. Chadwick and Alexander Lincoln, of counsel), for appellant.

Howson & Howson (Hubert Howson and Charles Howson, of counsel), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and DODGE, District Judges.

DODGE, District Judge. The final decree appealed from by the defendant below perpetually enjoins him from prosecuting a suit in equity brought by him in the Circuit Court against the Western Electric Company on October 6, 1908. He owns United States patent 784,695, and his bill in the suit referred to sought an injunction and an accounting upon the charge that the Western Electric Company was infringing that patent. The alleged infringement consisted in selling and using certain insulating linings of a kind claimed to be with-

in that patent. The Bryant Electric Company, complainant below, makes the linings in question, and sells them to the Western Electric Company, which deals in them.

The bill seeking to restrain the prosecution of this suit was filed in the Circuit Court by the appellee here on December 5, 1908. The patentee demurred to the bill, but his demurrer was overruled, and a preliminary injunction granted. 169 Fed. 426. He then answered the bill, and on final hearing was perpetually enjoined. His present appeal is from all these orders and decrees.

The Circuit Court stayed the prosecution of his suit against the Western Electric Company because of the final decree in Marshall v. Pettingell-Andrews Co., a suit brought by him in 1905, in the same court, upon the same patent, for an alleged infringement consisting in the sale and use of similar insulating linings, and to which suit the Bryant Electric Company was privy, as will be explained later. After a hearing on bill, answer, and replication the bill was dismissed by final decree entered June 3, 1907. 153 Fed. 579. The dsimissal was affirmed by this court September 25, 1908. 164 Fed. 862, 91 C. C. A. 8. In the suit now here on appeal, the Circuit Court regarded this final dismissal of the bill in Marshall v. Pettingell-Andrews Co. as a final determination, between this patentee and a party defendant in legal effect the same, of the same questions which he sought to raise by his bill against the Western Electric Company, and as conclusive against his right to maintain the latter suit, this appellee objecting.

In his bill against the Pettingell-Andrews Company, Marshall alleged, in the usual form, infringement of his patent "and the claims thereof." The answer denied the validity of his patent, and set up that it was void for a variety of specified reasons. It also denied infringement of the patent "or the claims thereof," and it was followed by Marshall's replication in the usual form. These issues having been thus raised, Marshall gave notice on the record on January 10, 1906, after offering his original letters patent in evidence, but before taking any further evidence, "that the complainant alleges and will take evidence to show infringement of claims 5 and 9 thereof." There were nine claims in all, but Marshall maintained the position announced as above, without subsequent change or modification of any kind throughout the proceedings, and put his case on these two claims only. The decree of June 3, 1907, dismissing the bill, recited to be "on final hearing on pleadings and proofs," was absolute and unqualified in its terms. No intimation from Marshall anywhere appears from the entry of his notice given January 10, 1906, until after the final decree on mandate, of any claim by him that the insulated linings in question infringed any other claims of his patent. No objection appears to have been suggested by him to the entry of the final decree in the form in which it stands.

It being admitted that there is no material difference between the insulating linings claimed to infringe the patent in the suit thus dismissed and those claimed to infringe it in the suit against the Western Electric Company, we are of opinion that the Circuit Court rightly held the patentee barred by the former judgment against him from maintaining the latter suit. It is true that both the courts which passed

upon the issues raised in the former suit expressly limited their investigation to the two claims upon which the then complainant elected to stand, and that they expressly abstained from giving any opinion regarding the other seven claims of his patent. But this was the result of the patentee's own choice. It was not the result, so far as appears, of any request or consent on the part of his adversary or of any ruling by the court. He had by his bill invoked the decision of the court upon the validity and scope of his entire patent in its application to the alleged infringing articles, and had found himself opposed by the alleged infringer upon all the points involved in the controversy he thus opened, and he cannot say that he has not had his day in court upon all the questions thus raised. The pleadings had put in issue (1) the validity of his entire patent, or at least its validity if so construed as to make the insulating linings complained of infringements of it; (2) whether such insulating linings did in fact infringe the patent or any of its claims. By the course he thereafter adopted in the litigation upon these issues, we think he voluntarily took the risk of losing by the final decree all right to assert that his patent has any validity for the purpose of giving him the exclusive right to make, sell, or use such linings as we now have before us, or to assert that they infringe his patent or any of its claims, so far as the Pettingell-Andrews Company or any one else in legal effect a party defendant in the same suit is concerned. If any claims of his patent were not expressly dealt with by the court, it was not because they were not before the court for its decision, but because he voluntarily abandoned the attempt to make good his contention regarding them. So far as they are concerned, he must now abide the final result.

The condition of the litigation has been fully pointed out above, and what has been said disposes of the case. We need go no further, because we are authoritatively bound to affirm the judgment of the Circuit Court by Columb v. Webster, etc., Co., 84 Fed. 592, 28 C. C. A. 225, 43 L. R. A. 195, decided by this court in January, 1897, United States v. California, etc., Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476, and Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065. These cases lay down positively the rules which must govern and the application thereof, and they cover fully all the material aspects of this litigation.

The patentee contends that he is not concluded by the decree against him in the first suit because it is left uncertain on the face of the record in that suit that any precise question was raised and determined regarding the seven claims upon which the second suit was brought, while, if recourse be had to the opinions of the court, it appears that claims 5 and 9 were the only claims passed upon. He relies on Russell v. Place, 94 U. S. 606, 24 L. Ed. 214. The patentee in that case had obtained a judgment at law against an infringer. There were two distinct claims in the patent. Manufacture and use of the invention was the infringement alleged in the declaration, but it was not alleged which claim was infringed, nor that both were infringed. The answer had pleaded the general issue, and set up want of novelty and prior use. This, it was held, did not bar the patentee from maintaining a bill against the same infringer for an accounting and injunction, after

a reissue of the patent with amended specifications; because there was no way of knowing from the record in the suit at law whether the judgment was for infringement of one or the other or both the claims sued on. We find no such uncertainty on the face of a record showing that the questions both of validity and of infringement were expressly put in issue as to all claims of the patent, so far as their infringement by sale or use of the articles in question is concerned.

According to the patentee, there were distinct causes of action in the two suits because the sales of which he complained were distinct sales by different defendants. There is no contention that the Western Electric Company is identified in interest with the Pettingell-Andrews Company, nor that any of the sales made by one involve the identical infringing articles sold by the other. But the Bryant Electric Company is entitled to the benefit of the result against the patentee in his first suit if it can show (1) that it was in effect a party to the first suit; (2) that its rights as established against the patentee in the first suit are involved in the second suit. If these are the facts, whether or not the patentee might say, as against the Western Electric Company, that the causes of action are distinct in the two suits because other sales by a different defendant are in question, he cannot say so as against the Bryant Electric Company.

The Bryant Electric Company shows (1) that it became in effect a party defendant in the patentee's first suit. This appears by a stipulation of record in that suit, whereby the parties expressly agreed that it was defending the suit. It shows further (2) that its rights established in the patentee's first suit are involved in his suit against the Western Electric Company. This appears from the pleadings in the case now here on appeal. Its bill alleges that the infringing articles in question for selling which the patentee was seeking to hold the Western Electric Company as an infringer were manufactured by it and purchased from it by the Western Electric Company. It also alleges the identity in character of those articles, for all material purposes, with the articles in question in the patentee's suit against the Pettingell-Andrews Company; and these allegations are all admitted by the patentee in his answer to the bill. Its position is, therefore, for all material purposes the same as that of Kessler in Kessler v. Eldred above cited; and as manufacturer and seller of the articles before the court in the first suit, now that it has intervened and successfully defended one customer against the patentee's charge of infringement in respect of them, it has the right to require that its other customers "be let alone" by the patentee so far as they are concerned. 206 U. S. 289, 27 Sup. Ct. 611, 51 L. Ed. 1065.

The patentee contends that, since he complained in his first suit of sales only, nothing beyond the right to sell such articles was or could have been passed upon in that suit, and that the Bryant Electric Company's right to make them was neither involved in nor established by the decree, whether it assumed the defense or not, so that its position does not correspond with that of Kessler in the decision just referred to, whose right "to make and sell" had been established by a former suit. Making and selling are, of course, distinct acts, may constitute distinct infringements, and may give rise to different causes of

action, but neither in the litigation between these parties nor in Kessler v. Eldred did any occasion arise for distinguishing between them, as might have been necessary were a license involved to do the one act without doing the other. If articles of a given description are held by competent authority not to be infringing articles so far as a given patent is concerned, the result, under such circumstances as these, is that the articles are free to be made, sold, or used by the defendant, so far as the patentee is concerned.

The patentee contends that the present case is not within Kessler v. Eldred, even if the decree in his first suit is rightly held a bar to similar infringement suits between the parties upon any claim of his patent, and the Bryant Electric Company rightly held one of the parties in legal effect. He urges that there was no evidence sufficient to warrant an injunction of probable damage to the Bryant Electric Company through multiplicity of suits against its customers, or through intimidation of customers by such suits or by the patentee's threat to bring them, as there was in Kessler v. Eldred. It is true that the patentee denied in his answer to the bill, and in his testimony agreed for the purposes of the case shortly before the final decree, any intent to harass the Bryant Electric Company in its business, or to bring further suits against its customers until after the suit here in question is decided. But he had distributed a circular to the electrical trade in August, 1905, giving general notice that the Pettingell-Andrews Company had been sued, that no one would be allowed to infringe his patent, that dealers and users were liable equally with the manufacturer, that, if the trade continued to handle these articles, it would be held to strict accountability, and that, after receipt of his notice, no excuse would remain for ignorance as to his intentions. A suit against another customer brought, as this was, immediately after the decree in the Pettingell-Andrews suit was affirmed in 1908, could hardly be regarded as brought for any other purpose than that announced in the circular to hold dealers and users to strict accountability. Upon the principles declared in Kessler v. Eldred, we think its natural and probable effect upon the Bryant Electric Company's customers was rightly held enough to justify the injunction issued.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.