## GREAT NORTHERN RY. CO. v. GENERAL RAILWAY SIGNAL CO.

### No. 9247.

Circuit Court of Appeals, Eighth Circuit.

Feb. 29, 1932.

Rehearing Denied April 19, 1932.

Thomas Ewing, of New York City (F. G. Dorety, of St. Paul, Minn., on the brief), for appellant.

Amasa C. Paul, of Minneapolis, Minn., and Clifton V. Edwards, of New York City (Neil D. Preston, of Rochester, N. Y., and Maurice M. Moore, of Minneapolis, Minn., on the brief), for appellee.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

Appellee, herein called the signal company, brought suit in the United States District Court for the District of Minnesota against appellant, herein termed the railway company, for the infringement of a certain patent, No. 1,551,515, for improvements in an automatic train control system, which patent was applied for by one Howe, whose rights later passed to the signal company by assignment. The railway company secured its alleged rights from the Sprague Safety Control & Signal Corporation, which installed the alleged infringing system and defended the suit for the railway company. The original bill of complaint did not set forth any particular claims that were infringed, but charged generally infringement, thus bringing into the case all the many claims of the patent. The answer of the railway company alleged that "Letters Patent No. 1,551,515 herein sued upon and each of the claims thereof is invalid and void," and it also denied infringement.

The District Court held there was no infringement of the patent and dismissed the case. General Ry. Signal Co. v. Great Northern Ry. Co., 21 F.(2d) 697.

Upon appeal to this court the decree of the District Court was reversed, and the Howe patent was held to be valid and infringed. The case was remanded to the trial court. This court in concluding the opinion said: "We think the Howe patent is infringed by the device of appellee, and that the decree should be reversed, with instructions to set the decree aside, to enter a decree of infringement, and to take such other and further action as is in support thereof. It is so ordered." General Ry. Signal Co. v. Great Northern Ry. Co., 43 F.(2d) 790, 807.

The trial court upon return of the case entered a decree on the mandate, setting aside the decree formerly entered on October 6, 1927, and held the signal company to be the owner of letters patent No. 1,551,515, as assignee of Howe; that said letters patent were good and valid in law as to claims 8, 9, 10, 13, 17, 18, 19, 20, 23 to 34, inclusive, 37, 41 to 49 inclusive, 51, 55 to 60, inclusive, 62, 63, 65, 66, 67, 68, 70, 71, and 72 thereof; that the railway company had infringed said letters patent, and particularly the claims hereinbefore specified.

Appellant claims the court erred in this decree and went beyond the terms of the mandate.

The reason for this second appeal is made clear by the following assignments of error:

"4. That the Court erred in making any ruling respecting any claims of the patent in suit other than those mentioned in the opinion of the Court of Appeals, namely, Claims 9, 10, 23, 30, 34, 43, 48, 56, 57 and 58.

"5. That the Court erred in making any ruling respecting claims 13, 26, 44, 45 and 72, in none of which is specified a time element associated with the forestalling device.

"6. That the Court erred in finding claim 72 valid in the Howe patent in suit."

The real point in this controversy is whether the decree of the trial court goes beyond the mandate. That depends on what was decided by this court when the case was originally before it. The patent covered a large number of claims. The forty-five claims involved did not exhaust all the claims of the patent. Mr. Edwards, one of the counsel for the signal company, stated at the commencement of the trial of the case: "Some time ago in answer to a request from Mr. Ewing we selected out of the large number of claims in the patent in suit, the following upon which we would rely, and I read them on the record. They are 8, 9, 10, 13, 17, 18, 19, 20, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33,

34, 37, 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 55, 56, 57, 58, 59, 60, 62, 63, 65, 66, 67, 68, 70, 71 and 72. While we charge infringement of all these claims, your Honor, I may mention the following ten claims which are typical of all of them and upon which we rely and which I think will be sufficient for consideration. They are 9, 10, 23, 30, 34, 43, 48, 56, 57 and 58." Mr. Ewing was of counsel for the railway company, or the Sprague Company, and assented evidently to this arrangement, and the case was tried on the theory that the ten claims specified were typical of all the forty-five claims. The appeal in this court was a mere continuation of the suit below. 3 C. J. p. 320, § 34; Gulf Refining Company of Louisiana, Norvell et al. v. United States, 269 U. S. 125, 46 S. Ct. 52, 70 L. Ed. 195.

The opinion of this court was written by Judge Stone, and is most exhaustive in its treatment of all the questions involved. It should be consulted to ascertain what was intended by the mandate. It is in effect a part of the mandate. In re Sanford Fork & Tool Company, Petitioner, 160 U. S. 247, 16 S. Ct. 291, 40 L. Ed. 414; State of Oklahoma v. State of Texas, United States, Intervener, 256 U. S. 70, 41 S. Ct. 420, 65 L. Ed. 831; Gulf Refining Company of Louisiana, Norvell, et al. v. United States, 269 U. S. 125, 46 S. Ct. 52, 70 L. Ed. 195. We quote from Judge Stone's opinion, General Ry. Signal Co. v. Great Northern Ry. Co. (C. C. A.) 43 F.(2d) 790, 799:

### "Claims Involved.

"Howe contends that his device is protected by ten typical claims which are infringed. Those are claims 9, 10, 23, 30, 34, 43, 48, 56, 57, and 58. Counsel for Howe state:

" 'For convenience these claims may be divided into groups and one claim taken as typical of the group as follows:

" 'Claim 9, typical of 9, 34 and 10.

" 'Claim 30, typical of 30, and 43.

" 'Claim 58, typical of 23, 48, 56, 57 and 58.

" 'Of the claims relied upon, claims 9 and 34 are the broadest.'

"Those three claims (9, 30, and 58), selected as typical, are as follows: * * *"

The opinion then sets forth in full claims 9, 30, and 58. Judge Stone did not take up and consider one by one the claims of the Howe patent, but limited his discussion to the typical claims. It is now insisted by the railway company that this court upheld as valid and infringed only the ten claims which were taken as typical in the trial court, namely, 9, 10, 23, 30, 34, 43, 48, 56, 57, and 58, and that the District Court had no right to enter a decree whatever affecting the other claims.

There is no need of spending any time on the proposition that the proceedings taken in the trial court upon the reversal of a judgment or decree must conform to the mandate of the Appellate Court. That goes without saying.

When the case was brought it was the undoubted intent, as shown by the pleadings, to contend that all the forty-five claims of letters patent No. 1,551,515 referred to in the complaint were infringed. The request to pick typical ones out of the large number of claims apparently came from counsel for the railway company. If the decree of the trial court dismissing the bill had been affirmed by this court there is no doubt that the railway company would have been protected against a suit by the signal company for infringement as to any one of the claims. Marshall v. Bryant Electric Co. (C. C. A.) 185 F. 499; Union Steam Pump Co. v. Manton-Gaulin Mfg. Co. (D. C.) 272 F. 773. All of these claims would have been res adjudicata and the signal company could have been restrained by a court of equity from bringing further suits for infringement as to these claims. Such is the doctrine of Kessler v. Eldred, 206 U. S. 285, 27 S. Ct. 611, 51 L. Ed. 1065. The series of cases arising from litigation over the Marshall patent, which was "for an insulating lining for the outer metallic shell of an incandescent lamp socket," etc., Marshall v. Pettingell-Andrews Co. (C. C.) 153 F. 579; Marshall v. Pettingell-Andrews Co. (C. C. A.) 164 F. 862; Bryant Electric Co. v. Marshall (C. C.) 169 F. 426; Marshall v. Bryant Electric Co. (C. C. A.) 185 F. 499, are interesting on this question. In the first case of the series, Marshall v. Pettingell-Andrews Co. (C. C.) 153 F. 579, it was held by the District Court that claims 5 and 9 were void in view of the prior art. The Circuit Court of Appeals in Marshall v. Pettingell-Andrews Co., 164 F. 862, sustained the decree of the trial court, and held claims 5 and 9 to be void. Marshall then brought a suit in equity in the District Court of Massachusetts against the Western Electric Company, in which he referred to the holding in the other suit that claims 5 and 9 were void, and in his claim of infringement excluded these. The patent next appears in Bryant Electric Co. v. Marshall (C. C.) 169 F. 426, which was a bill in equity to enjoin Marshall from proceeding with the second

suit. Reference is there made to Marshall v. Pettingell-Andrews Company, supra, and to the limitation of complainant's case there to claims 5 and 9. To this bill defendant demurred upon a number of grounds, one of which was that in the first suit the court passed only upon claims 5 and 9 of the patent, while in the second suit these claims were excluded and only the other claims of the patent were relied on, and that therefore the invalidity of the Marshall patent generally was not res adjudicata. Complainant contended that the decree in the first suit, although the opinion was limited to claims 5 and 9, barred proceedings between the same parties to restrain similar infringement of other claims of the Marshall patent. The court pointed out that the Circuit Court and the Circuit Court of Appeals in the first suit considered no claims of the Marshall patent other than claims 5 and 9, saying, page 429 of 169 F.:

"The court is not here required to decide that a patentee may not by appropriate pleadings split up his patent so as to harass a competitor by many suits in the case supposed. Unreasonable as this practice appears, this court has no present need to decide against it. In the first case, the pleadings covered the whole patent, and did not discriminate between its claims. The selection of claims 5 and 9 was informal, and served merely to direct the attention of this court, and of the Circuit Court of Appeals, to the gist of the complainant's argument. The failure to press a point in argument does not invalidate a judgment rendered upon a matter not pressed, although the concession made at the argument be later supposed to have been ill advised. * * *

"This court here decides only that, where a patent of several claims is made the basis of a bill in equity to restrain its infringement, where the bill makes no discrimination between the claims and is dismissed generally upon the merits, then the complainant may not thereafter, by another bill, seek to restrain the same defendant from doing the acts complained of in the first suit, merely by alleging in his later bill an infringement of certain claims not pressed in the argument of the first suit nor mentioned in the opinion of the court."

The demurrer was overruled. This case was appealed to the Circuit Court of Appeals of the First Circuit, Marshall v. Bryant Electric Co., 185 F. 499. We quote a part of the syllabus as showing rather concretely what was in part held: "A decree rendered after full hearing dismissing a bill alleging infringement of a patent and all of its claims, upon which issue was taken by the answer, is a conclusive adjudication that the device in suit does not infringe any claim of the patent as between the parties or their privies, notwithstanding the fact that complainant voluntarily by notice restricted his proofs and contention to certain specified claims."

We quote also from the opinion, pages 500–501 of 185 F.: "It is true that both the courts which passed upon the issues raised in the former suit expressly limited their investigation to the two claims upon which the then complainant elected to stand, and that they expressly abstained from giving any opinion regarding the other seven claims of his patent. But this was the result of the patentee's own choice. It was not the result, so far as appears, of any request or consent on the part of his adversary or of any ruling by the court. He had by his bill invoked the decision of the court upon the validity and scope of his entire patent in its application to the alleged infringing articles, and had found himself opposed by the alleged infringer upon all the points involved in the controversy he thus opened, and he cannot say that he has not had his day in court upon all the questions thus raised." The decree of the lower court was affirmed.

In Union Steam Pump Co. v. Manton-Gaulin Mfg. Co. (D. C.) 272 F. 773, 775, defendant had sued plaintiff in the United States District Court for the Eastern District of Michigan for infringement of its patent which comprised nine claims in all. The court had passed upon only claim 2, holding it not to be infringed. Plaintiff sought an injunction under authority of Kessler v. Eldred, supra, against suits which defendant was threatening to bring against plaintiff's customers under other claims of its patent. Upon the motion to dismiss the court said: "In the case at bar an examination of the record in the Detroit case shows that the intent of the court in that case was to pass upon this patent as a unit. * * * In the case before me I think the patent should be treated as an entirety, and that the matter should be regarded as res adjudicata, the same patent having been involved in the Detroit suit. * * * *"

In the Bryant Electric Company v. Marshall Case, supra, and in this case it is to be noted there had been no selection agreed upon of certain claims being typical of others asserted to be infringed as is the situation here.

A decree of dismissal in a patent infringement suit necessarily means there was not a single claim in issue that was both valid and infringed, and the res adjudicata effect of such a decree, as appears from the cases we have cited, extends to claims not in issue as long as they might have been raised and considered. An affirmance of such decree of course has the same res adjudicata effect. Ordinarily a reversal of such decree would not necessarily mean the reverse of that situation. We think under the circumstances here, however, the reversal did have the exact opposite effect as to res adjudicata from what an affirmance of the decree of dismissal would have had, and was entitled to res adjudicata effect upon the validity of all the forty-five claims and their infringement by the devices which the suit involved. Only the questions which the Appellate Court had before it and which were considered and intended to be decided would be settled by the decree. General Inv. Co. v. Lake Shore & M. S. Ry. Co. et al. (C. C. A.) 269 F. 235. It is to be construed with reference to the issues it was meant to decide. Vicksburg v. Henson, 231 U. S. 259, 34 S. Ct. 95, 58 L. Ed. 209. What was intended to be settled can be gleaned from the opinion and the record. As the court said in State of Oklahoma v. State of Texas, 256 U. S. 70, 88, 41 S. Ct. 420, 423, 65 L. Ed. 831, "What was involved and determined in the former suit is to be tested by an examination of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinion of the court; there being no suggestion that this is a proper case for resorting to extrinsic evidence."

We turn to these matters to discover what the parties intended should be settled. The railway company pleaded in its answer that all the claims of the patent were invalid and not infringed by it. At or before the trial it requested the signal company to select from the large number of claims certain ones upon which it would rely, and the signal company did so and selected ten typical claims. The railway company could have challenged this statement entered of record and insisted upon each of the forty-five claims being considered separately. Presumably selection of ten as typical and representative of the large group shortened the trial and economized expenses. It narrowed not the issue but the evidence determinative of the issues. The railway company was apparently willing to have all of the claims follow the decision as to the ten; else why agree to the selection of any as typical. If the decree had been affirmed, of course the railway company or the Sprague Company would have been satisfied that all the claims had been passed on, and no further suits could be maintained for infringement. Counsel for the railway company contends that the mere naming of ten claims as typical of all of them cannot take the place of presentation, testimony, or argument, and points out that the only case known where anything similar was attempted is Sirocco Engineering Co. v. B. F. Sturtevant Co. (D. C.) 209 F. 624, where the attempt failed. In that case defendant had moved the court to "enter a decree dismissing the bill as to the claims of the two patents in suit not considered and adjudicated on at the final hearing." The court denied the motion saying: "Under such circumstances I do not understand that the rules or the practice requires the court to pronounce any decree whatever as to the claims not presented, considered, or passed upon. It seems to me that as the court has not considered such claims, and was not called upon by either party to do so, it would be improper to make any decree regarding them." However, here all of the forty-five claims were presented, considered, and passed upon by passing upon ten claims selected and agreed to by the parties to the suit as typical of all the claims. In the case from which we have just quoted the court was asked to declare invalid all claims that it had not expressly found valid in favor of the plaintiff. Of course, decreeing some claims to be valid is not decreeing the remaining claims to be invalid. The claims were not concededly typified by the claims under consideration, as is the situation here.

In Haynes v. Union Carbide & Carbon Corporation, 46 F.(2d) 4, 6, also cited by counsel for the railway company, the opinion of the trial court, referred to by the Circuit Court of Appeals, specifically limits the court's conclusion to claim 8, and this sentence is found in the opinion of the trial court, "The decree may be silent as to the other claims." The Appellate Court refers to this as emphatic of the judicial intent to limit the ruling to claim 8. If this court had intended in the present case to limit its ruling to certain specified claims it could, instead of issuing instructions to the trial court to set the decree aside and enter a decree of infringement, have stated that the trial court might maintain silence as to the other claims than the ten typical ones, but it did not do so.

It seems to us that it was the intention of the parties that all the claims were to stand or

fall on the decision as to the ten typical ones, and that the railway company is not in a position now to assert that the ten claims which were agreed upon as typical of the forty-five claims are not typical of them, nor is it the present duty of this court to examine each of these claims to determine whether the ten selected are typical. The counsel who agreed to the proposition that they should be would probably know more about them than any court. They were taken as typical in an evidentiary sense. In assenting so to do and in trying the case on that theory the railway company or the Sprague Company are now estopped from saying that they are not typical. All the claims of the patent were in issue. The statement of Mr. Edwards was: "We charge infringement of all of these claims." The railway company took the risk of having the forty-five stand or fall together.

Appellant finds particular fault with the court making any findings with reference to claims 13, 26, 44, 45, and 72, asserting that they could not be typical, as none of them specified a time element associated with the forestalling device. It may be remarked that the Howe patent was not sustained upon the basis of a time protected holdoff. It is especially urged that as to claim 72 in finding the same valid the court erred in not giving proper effect to a certain British patent, and it is asserted that claim 72 has been held by the Patent Office to read properly on an application filed by Sprague in the United States Patent Office December 31, 1914. The Sprague system was certainly fully discussed in Judge Stone's opinion. It is not questioned that the British patent was prior to Howe, and the determination of that issue depended on whether it disclosed the subject-matter of the Howe patent. However, as the record stands here, as we have before said, we do not feel called upon to enter this domain. If the railway company desired to rely on any matters differentiating its defenses to the various claims, it should not have agreed to pick certain claims as typical. If the railway company had considered the time limit associated with the forestalling device as differentiating claims 13, 26, 44, 45, and 72 from the other claims taken as typical of all, and if such feature was material in determining validity or infringement of such five claims, it could have insisted on these claims being pre-

sented and considered separately. It did not do so, but took its chances of all standing or falling by the decision on the ten typical claims.

Further, it must not be overlooked that in the present case it was apparently the intention of the District Court and this court to pass upon this patent as a unit. Union Steam Pump Co. v. Manton-Gaulin Mfg. Co. (D. C.) 272 F. 773. Judge Stone's opinion did not delimit the issue to certain claims. He speaks of the ten claims as being typical, and three of these as being typical of the rest, that claims 9 and 34 are the broadest, and finally, he speaks of the Howe patent and not of any particular claims thereof. In this court the signal company attacked the decree of the court below, not on any special grounds peculiar to some claims alone, but on the theory that the whole process of inquiry which the trial had evolved required a different result than that reached by the court below. If it was not proper to consider the ten claims as typical of the forty-five, then the three claims should not be considered as typical of the ten, and the decision should be confined to the three claims.

In the much-desired effort to shorten trials there is ofttimes comprehensive adjudication made upon incomplete evidence which is typical of the general situation. In The New England Divisions Case, 261 U. S. 184, 199, 43 S. Ct. 270, 276, 67 L. Ed. 605, the Supreme Court speaks with reference to some orders of the Interstate Commerce Commission, and says that they are based upon evidence which the Commission assumed was typical in character, and "It might, therefore, have declared in terms that, if the Commission finds that evidence introduced is typical of traffic and operating conditions, and of the joint rates and divisions, of the carriers of a group, it may be accepted as prima facie evidence bearing upon the proper divisions of each joint rate of every carrier in that group." Something similar to that was done here. Both parties agreed to the method of procedure adopted in this case, and both should now be estopped to deny that these ten claims so selected are typical of the other thirty-five. It seems to us that the decree of the District Court was in substantial conformity with the mandate of this court, and it is affirmed.