### L. E. WATERMAN CO. v. FORSYTH et al.

(Circuit Court, S. D. New York. January 7, 1903.)

No. 7,336.

1. PATENTS—APPLICATION—SECOND APPLICATION FOR SAME DEVICE.

A second application for a patent, which describes precisely the same device as a former one, which has been abandoned by permission, will be treated as continuous of the first.

2. SAME—INVENTION—FOUNTAIN PENS.

The Waterman patent, No. 604,690, for an improvement in fountain pens, which consists essentially in making a conical or tapered joint between the cap and the barrel or nozzle of the pen (the cap being thinner and more elastic at the mouth, to form a noncapillary joint), while showing an improved method of construction, does not disclose patentable invention; the adaptation of such joints, which were old and well known, and in use in other articles made of hard rubber, to use on a fountain pen, requiring only the skill of a mechanic.

In Equity. Suit for infringement of letters patent No. 604,690, for a fountain pen, granted to Lewis E. Waterman May 24, 1898. On final hearing.

Walter S. Logan (Fred C. Hanford and Samuel S. Watson, of counsel), for complainant.

William B. Whitney, for defendants.

HAZEL, District Judge. This is a bill to restrain infringement of United States letters patent No. 604,690, issued to Lewis E. Waterman May 24, 1898, and subsequently, on December 29, 1898, assigned to complainant. The application for the patent was filed August 12, 1895. It was a second application; an antecedent one filed July 31, 1894, being abandoned, by permission of the Patent Office, after its rejection by the Commissioner on appeal. The second application, upon which the patent, after considerable argument and repeated rejections, was finally allowed, was for precisely the same invention described in the first application. It was so treated by the Patent Office. Therefore, under the authorities, the second application for the patent will be treated as continuous of the first. International Tooth Crown Co. v. Richmond (C. C.) 30 Fed. 775; Henry v. Francestown Stove Co., 9 O. G. 408, Fed. Cas. No. 6,382; Colgate v. W. U. Tel. Co., 4 Ban. & A. 36, Fed. Cas. No. 2,995; Graham v. Geneva Mfg. Co. (C. C.) 11 Fed. 138; Godfrey v. Eames, 1 Wall. 317, 17 L. Ed. 684.

The patent relates to improvements in hard rubber fountain pens, and includes 26 claims, and 8 pages of specifications. It was practically conceded on argument that the claims in dispute are merely

for a concentric cone joint, consisting of an elastic outer member at its mouth, and a rigid inner member. It would seem, therefore, to have been entirely unnecessary to multiply such details of claims as the specifications disclose, and to descant upon them with such elaborate and painstaking fullness. The claims alleged to be infringed are 5 to 9 and 17 to 26, inclusive. Claims 5, 6, 7, 8, and 9 read as follows:

"(5) In fountain pens, one or more annular progressive elastic ink and union joints and stops, formed by the combination of truncated tubular wedges, without an abutting shoulder, and with an elastic mouth in the outer member of each joint, engaging the opposite part of the inner wedge or member with a comparatively slight elastic pressure; the stop being formed at and opposite the inner part of the conical chamber, where its wall is thicker, less elastic, and more rigid.

"(6) In fountain pens, an ink and union joint and stop, consisting in the co-operative and supporting union of external and internal conical members, the external member provided with an internal conical surface, seat, or chamber, and composed of material made progressively thicker and less yielding from the outer to the inner end of its conical surface, and the internal member provided with an external conical surface, in which the external member, at, by, and near its mouth, engages the opposite part of the internal member with elastic pressure, and forms a noncapillary joint and stop.

"(7) In fountain pens, an automatic and progressive ink joint and stop, consisting in the co-operative and supporting union of external and internal conical members, the external member provided with an internal conical surface, seat, or chamber, and composed of material made progressively thicker and less yielding from the outer to the inner end of the conical surface, and the internal member provided with an external conical surface, in which the external member, at, by, and near its mouth, engages the opposite part of the internal member with elastic pressure, and forms a noncapillary joint and variable stop, and the internal conical member projects beyond the external conical member, and thereby provides for the automatic maintenance of a progressive ink and union stop and joint during both use and wear.

"(8) In fountain pens, an ink and union joint and stop, consisting in the co-operative and supporting union of external and internal conical members, the external member being also provided at its open end with an elastic, externally beveled annular lip, that engages the opposite part of the internal member with elastic pressure, and forms a noncapillary joint and stop with and upon the internal member.

"(9) In fountain pens, a cap having within its open mouth a conical seat or chamber for the conical end of the fountain, also provided at its mouth with an externally beveled elastic annular lip, engaging the conical end of the fountain at and near its base."

Claims 5 to 9, inclusive, relate to fountain-pen caps, having an interior tapered or conical surface, an elastic exterior, and a tapered or conical external member, consisting of the nozzle or barrel of the fountain pen. Claims 17 to 26 are printed in the opinion of Judge Lowell in the case of Waterman v. Johnson (decided Jan. 16, 1902) 123 Fed. 303, which was for infringement of the patent in suit, and which renders unnecessary their restatement in extenso. It suffices that claims 17 to 26 constitute the elements of a conical or tapered interior member, and an elastic exterior member consisting of a cap with an elastic mouth. Complainant asserts and the proofs establish that the elasticity of the cap or exterior member is owing to its conformation. The cap has an annular lip, and is thinner at its mouth than at any other part. This manner of construction induces a degree of elasticity which enables the cap, when used as a

cover, to firmly grip the barrel or nozzle of the pen. Union joint connections are thus made between the fountain-pen cap and barrel or reservoir, and between the nozzle and ink fountain. In the one case the cap serves as a cover for the barrel or reservoir when the pen is in operation, and in the other for the nozzle or ink-feeding device when the pen is unemployed. Without passing upon the validity of the patent, Judge Lowell decided in the case before him that the claims were not infringed by the defendant, Johnson, because the interior of the cap used by the defendant for his fountain pen was cylindrically hollow, and had no tapered or conical surface. He also held that it was no invention to adapt a tapered cap joint to a fountain pen, as conical or tapered joints existed in stovepipes, atomizers, and mucilage bottles. Here the infringing pen is known as the "Parker Pen," manufactured by the Parker Pen Company. The defenses interposed are anticipation, want of novelty, and noninfringement. The alleged infringement is the adoption by the defendants of complainant's method of joining the cap with the pen nozzle at one end, and with the barrel or reservoir at the upper end of the fountain pen. The pertinent claims of the patent describe a combination in which the exterior of the nozzle or barrel member and the interior surface of the cap are conical or tapered in form. According to the specifications, the claims are sufficiently broad to include conical or tapered joint formations, as applied to vessels holding fluids. The primary object of the patent, however, is to secure protection for claims relating to a tapered cap joint in fountain pens. Conical or tapered joints are conceded to be old. Complainant contends that such joints are new, as adapted to fountain-pen caps; that tapered or conical joints known to the art at the date of the invention were stiff and unyielding, while the tapered interior of the fountain-pen cap, fitting tightly to the tapered nozzle or barrel, imports to it a noncapillary element, which is not attainable in an unyielding or rigid joint, such as was employed prior to the discovery in suit. A noncapillary joint is formed by slight pressure or manipulation of the cap when the parts are all together. It is claimed by complainant that the differentiating feature from the prior art exists in the conformation of the interior cap surface, and in its elasticity at the mouth, which permits a progressive wedging of the members, and thereby produces a noncapillary result not theretofore achieved. Was the conception patentable? Is the discovery entitled to the dignity of invention? The specifications do not indicate the degree of elasticity required to make the mouth of the cap noncapillary. Caps of hard rubber, the substance employed in the fountain pen, are more or less elastic and yielding, and therefore it is self-evident that a greater degree of elasticity does not constitute invention. Waterman v. Johnson, supra. It is true, I think, that the beneficial results of the conicity of the cap are attributable to its elastic tendency when its mouth comes in contact with the tapered interior member. But as stated, a hard rubber fountain-pen cap of the old type yields to pressure when in contact with the conical or tapered barrel or ink-feeding device. This result, therefore, is not patentable.

Defendants attack the validity of the patent, and claim no inven-

tion is disclosed by it; that whatever may be deemed an innovation in the art is not of ideas or means, but is merely functional. According to defendants' views, the conical joint is very ancient and familiarly known. The record abounds with citations in anticipation showing a conical or tapered joint in wooden cider spigots, cigar holders, caustic holders, stovepipes, in hard rubber atomizers, and other merchantable articles. It also discloses various fountain pens, in which appear an interior tapered cap; also a cap having an annular lip and elastic mouth. The Lancaster fountain pen discloses an elastic progressive-wedge joint upon the tapered surface of the barrel. It does not appear when this pen was made. The evidence establishes, however, that fountain pens of a similar kind were made prior to the date of the Waterman invention. Many other fountain pens are in evidence, showing caps, the interior of which are tapered, fitting closely over the nozzle or reservoir of the fountain pen. Some of them rest upon a shoulder-boss. Other fountain pens—principally the Hamilton, No. 145,102, and the Copus British patent No. 3,936—show a tapered joint between the cap and lower end of the barrel. They are progressive-wedge joints, and have no stop or shoulder-boss. Demarest patent, No. 407,999, describes a noncapillary joint.

An examination of the testimony and the exhibits in evidence quite well satisfies me that what the patentee claimed as new is not entitled to the merit of invention. In the then state of the art a noncapillary progressive wedge joint was known—elastic tapered hard rubber substances, fitting tightly into each other, were known to produce a noncapillary jointure. Improvements over fountain pens then extant were undoubtedly made by complainant. But every improvement is not patentable. The Supreme Court has stated the rule to be that the improvement must be the product of an original conception. Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Pearce v. Mulford, 102 U. S. 112, 26 L. Ed. 93; Slawson v. Grand St. Ry., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576. Such was not the invention in suit. Irrespective of the existence of a similar joint in fountain pens, the citations of hard rubber atomizers, cigar holders, blowers, etc., having conical joints, are in analogy to the tapered exterior and interior members described by the complainant. The mere duplication of the joint does not import to complainant's device inventive skill. No new result was produced and no change was required to adapt the well-known noncapillary joints to the use designed by the patent in suit. Pennsylvania R. Co. v. Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Mann's Boudoir Car Co. v. Monarch Co. (C. C.) 34 Fed. 130; Holmes Elec. Protective Co. v. Alarm Co. (C. C.) 33 Fed. 254. The adaptation, therefore, of the conical or tapered joint to the use of the fountain pen, belonged to the domain of the skilled mechanic. To any one acquainted with a tapered joint as used in the exhibits herein referred to, it must have been a most obvious thing to apply the same joint to hard rubber fountain pens, and to thereby enhance their usefulness and durability.

The Waterman patent, No. 604,690, is therefore held to be invalid, and the bill may be dismissed, with costs.