CORRINGTON et al. v. WESTINGHOUSE AIR BRAKE CO.

(Circuit Court, S. D. New York.   October 2, 1909.)

1. PATENTS (§ 240*)—INFRINGEMENT—IMPROVEMENT OF PATENTED DEVICE.
   Infringement of a patent is not avoided by improvements on the patented device, although they may be patentable, which do not affect the principle of operation, function of the parts, or results obtained.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. § 240.*]

2. PATENTS (§ 107*)—ABANDONMENT—ABANDONMENT OF APPLICATION.
   The abandonment of one application for a patent on the filing of another for the same device does not preclude the patentee from showing the actual date of his invention to meet a claim of anticipation.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 150; Dec. Dig. § 107.*]

3. PATENTS (§ 110*) — DATE OF APPLICATION — SECOND APPLICATION FOR SAME DEVICE.
   A second application for a patent, which describes the same device as a former one, which 'is abandoned with the acquiescence of the Patent Office, will be treated as a continuance of the first, and as relating back to the date of its filing, for the purpose of a claim of prior public use more than two years before the second application was filed, but less than that time before the first was filed.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 153; Dec. Dig. § 110.*]

4. PATENTS (§ 101*)—CONSTRUCTION—SPECIFICATIONS—CLAIMS.
   A claim of a patent is not invalid, as for a function and not a mechanism, because it claims generally a means for doing a certain thing, provided the mechanism is fully described in the specification, which must be read in connection with the claim, and as a limitation thereof, whether specifically referred to therein or not.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 141; Dec. Dig. § 101.*]

5. PATENTS (§ 241*)—INFRINGEMENT—IDENTITY OF DEVICES.
   Mere result or effect is not the test of infringement, as the patentee is not entitled to every mechanical device which produces the same result, but there must be also a substantial identity in the mode of operation.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 380; Dec. Dig. § 241.*]

6. PATENTS (§ 244*)—INFRINGEMENT—COMBINATIONS.
   A patent for a combination is not infringed by the use of any or all of the parts, unless the combination is also used.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 385; Dec. Dig. § 244.*]

7. PATENTS (§ 245*)—INFRINGEMENT—COMBINATIONS.
   The fact that a substituted element in a patented combination performs an additional function does not necessarily prevent its being an equivalent in the combination, or the entire combination in which it is used from being the equivalent of that of the patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. § 245.*]

8. PATENTS (§ 328*)—INFRINGEMENT—FLUID PRESSURE BRAKE APPARATUS.
   The Corrington patent, No. 762,282, for a fluid pressure brake apparatus, was not anticipated, and is valid, and the claims are not limited to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

precise mechanism described in the specifications, but are entitled to the benefit of equivalents. As so construed, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by Murray Corrington and the Corrington Air Brake Company against the Westinghouse Air Brake Company for alleged infringement of United States letters patent No. 762,282, dated June 14, 1904, application filed September 28, 1903, granted to Murray Corrington for "fluid-pressure brake apparatus," and for an injunction and an accounting. The bill of complaint was filed March 6, 1907, the answer May 6, 1907, and the replication June 3d following. On final hearing. Decree for complainants.

Choate & Larocque (William G. Choate and Murray Corrington, of counsel), for complainants.

Thomas W. Bakewell and J. Snowden Bell (E. A. Wright, Thomas W. Bakewell, and J. Snowden Bell, of counsel), for defendant.

RAY, District Judge. The letters patent in suit No. 762,282, granted June 14, 1904, on application filed September 28, 1903, to Murray Corrington, of New York City, for "fluid-pressure brake apparatus," relates, says the patent, "to improvements in fluid-pressure brake mechanism, and has for its object, more particularly, the better control of railway vehicles by enabling an engineer to hold his train under a more certain and continuous brake control than is feasible with the existing brake systems." It also says:

"It is intended to describe and claim herein, broadly, mechanism for accomplishing the results set forth, to which the apparatus described in my application heretofore filed and that described in another to be filed are subordinate."

The patent contains 14 claims, some of which are much broader than others. Claim 1 seems to be the broadest. At least it is very broad, and reads as follows:

"1. In a fluid-pressure brake system, the combination, with a train-pipe normally charged with pressure, of apparatus on an engine and apparatus on a car capable of operation by a reduction of train-pipe pressure to apply brakes and means under control of the engineer for alternately holding brakes applied on the engine while releasing brakes on the car, and vice versa."

Claims 3 and 5 are also broad claims. They read as follows:

"3. The combination with a brake-cylinder, an auxiliary reservoir, and a triple valve, on a car, of a brake-cylinder, an auxiliary reservoir, and a valve device automatically operative to apply brakes, on an engine, and a valve mechanism capable of operation by the engineer for controlling said apparatus on car and engine, and for applying and releasing brakes, at one time alternately and at another time conjointly between engine and car. * * *

"5. In a fluid-pressure brake system, the combination, with a triple valve and a brake-cylinder on a car, a valve device automatically operative to apply brakes and a brake-cylinder on an engine, of means capable of control by the engineer for operating said triple valve and automatic valve device to application and release or normal positions and similarly controlled means, independent of the movement of the engine-valve device, for alternately releasing and applying brakes on the engine while the triple on the car is, respectively, in positions for applying and for releasing brakes."

Claims 7 and 8 read as follows:

"7. In a fluid-pressure brake system, the combination of an automatic valve device operative by a reduction of pressure in a brake-pipe to admit pressure into a brake-cylinder, an unobstructed passage leading to said cylinder, which is independent of said automatic valve device, and means operated by the engineer for admitting pressure to the cylinder through said passage and for controlling said pressure after its admission independently of the position of said automatic valve device.

"8. In a fluid-pressure brake system, the combination, with a brake-cylinder and a valve device automatically operative to apply brakes, of a valve-seat, a free and unobstructed passage leading from said valve-seat to said cylinder, and a valve capable of operation by the engineer and independent of the brake-valve proper for controlling the flow of pressure through said passage and at the same time controlling all exits from said cylinder, whereby any desired pressure may at any time be admitted to said cylinder and maintained or increased or decreased at will."

Claims 1 to 6, inclusive, seem to be the broadest claims. Claims 7 and 8, quoted, are of the narrower class. In his specifications, the patentee says:

"From what I have said above it is apparent that my apparatus herein illustrated and described is capable of operation as an engine-brake system in connection with the regular automatic-brake system upon the cars in either of the following manners:

"First. It may be operated merely as part of the regular automatic-brake system, setting the brakes on the engine at the same time they are set upon the cars and releasing on the engine and cars at the same time before recharging the reservoirs.

"Second. The engine-brakes may be operated to apply at the same time that brakes are applied on the cars, then held in application while the auxiliary reservoir on the engine is recharged, while brakes on the cars are released and reservoirs recharged.

"Third. The brakes on the engine may be applied and the pressure varied up or down at will without applying brakes on any of the cars. This may often happen to be very advantageous in switching, or when it is desired to steady the train wtihout waste of time or of air involved in applying and releasing throughout the train by movement of the handle, 62.

"Fourth. The brakes may be set on engine and cars, and then the pressure in the engine-cylinders either held constant or increased or reduced at will while holding the brakes applied on the cars.

"Fifth. The brakes may be applied on engine and cars alternately, holding them on the engine while releasing and recharging on the cars, and then, after reapplying on the cars, either reducing the pressure on the engine-brakes to the minimum or releasing on the engine entirely. This will doubtless be of great advantage for controlling the train, particularly on a grade where the brakes may be applied throughout the train, then released on the engine until the time comes for recharging reservoirs, when the brakes may be set upon the engine with the maximum force permitted, while the brakes are released and the reservoirs recharged upon the cars, when, after reapplying on the cars, the engine-brakes may be again released until the time arrives for the next recharging on the cars. This alternate operation of the engine-brakes and the car-brakes, particularly on a grade, will allow the train to be held under continuous brake-control without risk of overheating the wheels either on the engine or on the cars.

"I count it one of the principal features of my apparatus, in connection with the standard apparatus on the cars, that I produce an alternate brake system capable of operating either conjointly or alternately between engine and cars, holding engine-brakes on while releasing and recharging on cars, and then while holding brakes applied on the cars releasing on the engine."

The defendant says that defendant's apparatus does not infringe; that claims 3, 5, and 6, and 7 to 14, inclusive, do not apply, even in

terms, to defendant's apparatus; second, that the patent in suit is void, for the reason that claims 1 to 6, inclusive, are anticipated by prior knowledge and use and prior patents and publication; third, that, under the state of the art, the claims must be strictly limited to the specific apparatus therein shown and described, viz., one essentially characterized by the presence of a "free and unobstructed passage" from the straight air brake valve and the triple valve, respectively, to the brake cylinder, and by the absence of any obstruction, in the form of an intermediate mechanism between said members; fourth, that the resemblance between defendant's E T equipment, notably as to the engineer's automatic brake valve, is due to the fact that Corrington has copied and appropriated prior devices originated by the defendant and covered by its patents; fifth, that the complainant, Corrington, filed an application May 16, 1903, and abandoned it, and the complainants cannot avail themselves of such prior filing date, but must be limited to the filing date of September 28, 1903, on which application the patent in suit was granted, and that so limited anticipation is established.

### Complainants' Claims.

In a fluid-pressure brake system, we have (claim 1) in combination with (1) train-pipe normally charged with pressure, (2) of "apparatus" on an engine and "apparatus" on a car capable of operation by a reduction of train-pipe pressure to apply brakes, and (3) "means" under control of the engineer for alternately holding brakes applied on the engine while releasing brakes on the car, and vice versa. Any apparatus on an engine and any apparatus on a car capable of being operated to apply brakes by reducing the train-pipe pressure is broadly claimed, if in combination with any means under the control of the engineer which will hold the brakes on the engine while releasing the brakes on the car, which means are also broadly claimed.

Claim 2 has a train-pipe "mechanism" on the engine and also on a car, but they must be automatically operative to apply brakes on reducing the pressure in the train-pipe. "Mechanism" is substituted for "apparatus" and "means." The brakes are released and held alternately on engine and car at one time, and at another time this mechanism or means may apply and release brakes on the engine and car at the same time. The automatic feature and this last-mentioned action seem to distinguish claim 2 from claim 1.

Claim 3, in place of "mechanism" on a car, specifies a brake cylinder, an auxiliary reservoir, and a triple valve on a car, and, in place of "mechanism" on an engine, specifies a brake cylinder, an auxiliary reservoir, and a valve device automatically operative to apply brakes, on an engine. The "means" or "mechanism" operative by the engineer consist of "a valve mechanism," which not only controls the "said apparatus" on both car and engine, but also apply and release brakes as specified. This is descending more to detail by specifying in what the "means," the mechanism, and the apparatus consist.

In claims 7 and 8 we have in a fluid-pressure brake system the combination of an automatic valve device operative by a reduction of pressure in the brake-pipe to admit pressure to a brake-cylinder, an unobstructed passage leading to said cylinder, which is independent of the

automatic valve device. The means operative by the engineer must admit pressure to the brake-cylinder through this "unobstructed passage," and also control the pressure after its admission independently of the position of the automatic valve device. Much stress is placed on the use of the words "unobstructed passage." They are found in the specifications, as well as in some of the claims. In the specifications we find:

"At all times and under all circumstances the engineer has complete control of the pressure in the engine-brake cylinders by reason of the free and open passage, 79, with which nothing in the whole valve structure is permitted to interfere, being placed under control of the valve, 71, permitting either the admission or exhaust of pressure to or from the cylinders, or its retention at any desired amount according as the valve, 71, is moved to 'application,' release, or 'lap.' "

I take it that if we have a fluid-pressure brake system, consisting of pump, etc., for compressing air, a train-pipe for conducting this air the length of the train, any sort of apparatus or mechanism on the engine, and any sort of apparatus or mechanism on the car or cars which are capable of operation by a reduction of the train-pipe pressure in the train-pipe, first on the engine and then on the car or cars, which are capable of operation by a reduction of the train-pipe pressure (the train-pipe being normally charged with pressure) to apply the brakes to the wheels of the engine and cars, and also any sort of means or mechanism or apparatus which is under the control of the engineer for holding the brakes, applied by the reduction of the pressure in the train-pipe, first on the engine and then on the car or cars, or first on the car or cars and then on the engine, or on both at the same time, in combination, it is claimed. In short, it seems to me that the patent claims a combination device (applied to engine and cars and controlled by the engineer), which will do this thing or these things, and that he broadly claims all means and all mechanism which in such a combination, so applied, will so operate in a fluid-pressure brake system, provided they are under the control of the engineer. The broad language of the claims is not, however, to control the determination of their validity and true scope, as we shall see. All this is to be settled by a reference to the specifications, whereby they are to be limited. I do not understand that the operativeness and utility of the device (as a whole) are questioned. Indeed, they cannot be. Compressers, train-pipes, valves for controlling the pressure of compressed air or releasing it altogether, under the control of the engineer, and brake-cylinders, were all old. The engineer could set the brakes on the entire train, including engine, by manipulating a valve or valves, and also release them. There was a time when (by the devices or combination of devices known) the engineer could not by the same apparatus set and release brakes on the entire train, including engine, and then release on the engine, leaving the rest of the train with set brakes, or release on the train, leaving the engine with set brakes, etc. One question is: Was the complainant Corrington the first to devise—invent or devise—a combination for doing this thing. He was not the first to conceive the idea of doing this, for such a mode of braking an entire train had been desired for many years.

The complainant Corrington insists that he made the broad invention of the patent in suit in two forms: (1) The apparatus whose results may be effected by the operation of an automatic brake valve and a straight air or "independent brake valve" and their handles; and (2) the apparatus whose results may be effected by the operation of an automatic brake valve only, and its handle. The first of these he mentions as the two-handle apparatus, and says he explained it to Mr. Burgess February 19, 1901, and that it has, by adapting and perfecting the same, become the apparatus particularly illustrated in the patent in suit and in the complainants' exhibit structure or "consolidated valve." The second he mentions as the one-handle apparatus, and says he explained this to Mr. Burgess on March 1, 1901, and that by adapting and perfecting same it became the apparatus of one-handle structure, exhibit drawing of June 5, 1903 (see C. R. p. 1349), and also the apparatus of his subordinate application now in interference in the Patent Office with defendant's first or principal application for a patent on its E T apparatus. Corrington says he determined to cover his complete invention by two patents—the first "to be based primarily upon the two-handle apparatus, but having claims of sufficient scope to cover broadly both mechanisms"; the second patent to be based upon the one-handle apparatus only. This seems to say that the claims of the patent in suit cover two inventions, only one of which is described in the patent in suit.

We can hardly sustain the defense of anticipation on the theory that the prior art shows devices which, if they had been combined, with simple changes and additions necessary to effect the combination, would have produced the mechanism and operation and results of the patent in suit, substantially. There might be an absence of patentable invention in such a case, but there would not be anticipation necessarily. I have examined the prior art, as shown by patents and publications, to ascertain if it discloses the mechanism, in combination, and ideas of the patent in suit, and am of the opinion it does not. I am of the opinion, and find, that Corrington, with a definite idea and purpose which he sought to accomplish, utilized much that was in the prior art, but that he was compelled to and did depart therefrom materially when he came to make the necessary changes in structures, simple though they now may seem, required to accomplish his purpose. He sought new and useful results, and he obtained them by new combinations and changes amounting to patentable invention; and I do not think his broad claims can be or are materially narrowed by the use of the words "unobstructed passage" in some of the later claims of the patent. Neither do I think that defendant can avoid the charge of infringement on the ground it has obstructed passage 79 by an intermediate mechanism, unless by so doing it has made a new device, working on a different principle, and performing new functions, and bringing about different, or at least better, results. If that passage 79 has been obstructed in any sense by any part of defendant's alleged infringing device, but the obstruction is of such a character that it does not interfere substantially with the flow or passage of pressure when desired, or required, so that the obstruction is of no consequence, is not detrimental, or, on the other hand, is a positive improvement, noninfringement is

not sustained. The improvement may be patentable as an improvement, and still infringement not be avoided. See cases hereafter cited.

The questions are: Did the patentee, Corrington, have a broad invention? Has defendant appropriated and used that invention, with minor changes or additions, or even substantial additions, in some part of the combination, which do not affect the principle of operation, function of the parts, and results attained? In complainant's apparatus the pressure admitted into passage 79 flows directly to and into the brake cylinder, while in defendant's E T apparatus the pressure, after being admitted to passage 79, or its equivalent passage, flows into an intermediate cylinder and operates a piston to open a valve which admits the same degree of pressure into the brake cylinder. It is pressure from the main reservoir in both cases which is admitted into the brake cylinder, and the amount desired in the brake cylinder is always determined, in both cases, by the amount admitted to or released from passage 79, or its equivalent. This is clearly an equivalent, and an infringing apparatus, if the complainant has valid, broad claims. Those claims are to be construed in the light of the prior art and the specifications of the patent in suit. They may be confined to the specific devices shown, or they may not be; but the prior art is always a limitation on broad claims. The complainant's patent, and all the claims thereof, are presumed to be valid; and the burden is on the defendant to show anticipation by clear, convincing, and satisfactory evidence. The defendant claims that it, or those under whose license and authority it is acting, had made this invention or combination, or at least the alleged infringing device or apparatus, and put it in actual public use and operation, more than two years before the complainant, Corrington, made his invention and applied for a patent therefor. If Corrington made his invention and then abandoned it to the public before filing an application for a patent, or actually made his invention more than two years before he filed his application, and it went into actual public use more than two years prior to the filing of the application, he lost his right. If Corrington actually made the invention at a certain time, and while he was experimenting and perfecting it, acting with due diligence, some other person made the invention and put it into use, priority of invention would not depend on the time of filing applications, unless Corrington delayed beyond the statutory time.

It appears that Corrington filed his first application for this invention on the 16th day of May, 1903, and subsequently filed a new application, and then and thereafter canceled or withdrew his first application. October 31, 1903, he informed the Patent Office that he abandoned his first application, "said abandonment to take effect upon the allowance of the later application, No. 174,946" (serial number). This does not preclude him from showing the actual date of his invention, where anticipation is alleged and claimed. If he made his inventions February 19, 1901, and March 1, 1901, respectively, and filed his first application May 16, 1903, and his second or last application September 28, 1903, for the same invention, and thereafter withdrew his first application, his first filing was not within two years of his invention, and, of course, his second filing was not. The defendant says the alleged an-

ticipating apparatus, Exhibit 12, was put into actual and public use in the United States April 17, 1902, and between June 1, and September 1, 1901, as to Exhibit 11, or the D. M. & N. Ry. combined automatic and straight air equipment. The use of apparatus, Exhibit 12, is claimed to have been 14 months after the complainant's alleged invention, and that of apparatus, Exhibit 11, 3 to 4 months thereafter. The last application of Corrington was filed September 28, 1903, or 1 year and about 5 months subsequent to April 17, 1902, and 2 years and 28 days subsequent to September 1, 1901. As the first application was filed May 16, 1903, this was 1 year and about 1 month subsequent to April 17, 1902, and 1 year, 11 months, and 15 days subsequent to June 1, 1901, the commencement of the summer of 1901.

A contention has arisen as to the right of the complainant, Corrington, to date his application back to that of his first application; that is, is May 16, 1903, to be regarded as his date of filing in case prior public use of the alleged anticipating device is found to have commenced "in the summer" of 1901—that is, somewhere between June 1, 1901, and September 1, 1901. I think the Corrington application, for the purposes mentioned, is deemed to have been filed on the 16th day of May, 1903; the second filing being a continuation of the first. His letter and statement was acquiesced in by the Patent Office, by silence at least, and the application was granted, and the patent issued. L. E. Waterman Co. v. Forsyth et al. (C. C.) 121 Fed. 103, affirmed 127 Fed. 1020, 61 C. C. A. 653; Tooth Crown Co. v. Richmond (C. C.) 30 Fed. 775; Colgate v. W. U. Tel. Co., 4 Ban. & A. 36, Fed. Cas. No. 2,995; Graham v. Geneva Mfg. Co. (C. C.) 11 Fed. 138; Godfrey v. Eames, 1 Wall. 317, 17 L. Ed. 684; Victor Talking Mach. Co. v. Am. G. Co., 145 Fed. 350, 76 C. C. A. 180. I see no reason why this should not be the policy of the law. If this be so, no rights were lost by reason of the alleged prior public use more than two years prior to the last application for the patent in suit.

Defendant insists that the broad claims, 1 to 5, do not, of themselves, define any novel means for accomplishing the results set forth in the patent, and that they are bad as being for functions or results, citing In re Gardner, 140 O. G. 258, 259. The defendant quotes from that decision:

"One cannot describe a machine which will perform a certain function, and then claim the function itself, and all other machines that may be invented by others to perform the same function."

This is undoubtedly true. But claims are always read in connection with the specifications and refer thereto. Here "mechanism" and "apparatus" are named in the claims and pointed out in the specifications; and in claims 3 to 5, inclusive, we have "brake cylinder," an "auxiliary reservoir," and a "triple valve" on a car in combination with a "brake cylinder," an "auxiliary reservoir," and a "valve device automatically operative to apply brakes," on an engine, and a "valve mechanism capable of operation by the engineer for controlling said apparatus on car and engine, and for applying and releasing brakes, at one time alternately and at another time conjointly between engine and car." As to each claim we must understand that we have an engine and a

car and a fluid-pressure brake system.  In claim 3 we have, specifically named, a brake-cylinder, and in combination therewith an auxiliary reservoir and a triple valve, on a car, and in the same combination an auxiliary reservoir and a valve device automatically operative to apply brakes, on an engine, and, in the same combination, a valve mechanism capable of operation by the engineer for controlling said apparatus on car and engine, and for applying and releasing brakes, at one time alternately and at another time conjointly between engine and car. This tells what the valve mechanism is for and how it must operate, and we necessarily turn to the specifications for a particular description of the valve mechanism and other things mentioned which require description.  The specifications say:

"Referring to the drawings, Figure 1 is a vertical section through a valve mechanism embodying my improvements," etc.

The patentee then goes on and gives a full and quite detailed and comprehensive description of his valve mechanism embodying his invention.  Not only are the construction and arrangement of parts shown and described, but the mode of operation and results.  I cannot see that this is a claim for a function.  I do not think that a patentee perils his claim by telling therein what certain mechanism is for, and what it will and must do, provided he fully describes that mechanism in the specifications.  In short, he claims certain mechanism devised to perform certain functions and obtain a certain result by certain operations, and this mechanism is described in the specifications. No one contends that an idea may be patented, or that functions may be patented.  Means to carry out an idea, and which in operation perform certain functions, may be patented.  In Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, claim 2 of the patent then being considered is quoted at page 553 of 170 U. S., at page 715 of 18 Sup. Ct. (42 L. Ed. 1136), and claims 1 and 4 at page 561 of 170 U. S., at page 718 of 18 Sup. Ct. (42 L. Ed. 1136); and, while it was contended that they were claims for a function or functions, the court held they were not.

The respective claims of this patent are not followed by the words "substantially as set forth," or "substantially as described"; but they are to be read with the specifications nevertheless.  Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33.  It was there said:

"Where the claim immediately follows the description of the invention, it may be construed in connection with the explanation contained in the specifications, and when it contains words referring back to the specifications it cannot be properly construed in any other way."

This case is cited and approved in Westinghouse v. Boyden, etc., Co., supra.  But, while resort may be had to the specifications, this may not be done to enlarge or expand the claim, only to limit it.  McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344.

Claims 1 and 2, however, present more difficulty.  The claims are broadly for "means" and "mechanism" to do certain things, perform certain functions, and obtain certain results.  In claim 1 the claim is for

"apparatus" on an engine and "apparatus" on a car capable of operation by a reduction of pressure "to apply brakes" and "means" for, etc. That such expressions are too indefinite, see Ex parte Holt, 29 O. G. 171, Ex parte Wilkin, 29 O. G. 950, and Ex parte Demming, 26 O. G. 1207, unless used to denote appliances which are no part of the invention. Ex parte Stoughton, 43 O. G. 1345; Ex parte Stanbridge, 43 O. G. 1345. But later cases seem to settle the law differently. These claims are not for functions, or principles, or modes of operation, but for "apparatus" and "mechanism" and "means" fully described in the specifications which immediately precede the claims. I think words in the claim referring to the specifications are entirely unnecessary. It is understood that the one refers to the other. Words of reference to the specifications, "if not expressed in the claim, must be implied, else the patent in many cases would be invalid as covering a mere function, principle, or result, which is obviously forbidden by the patent law, as it would close the door to all subsequent improvements." Mitchell v. Tilghman, 19 Wall. 287, 391, 22 L. Ed. 125, cited and approved in Hobbs v. Beach, 180 U. S. 400, 21 Sup. Ct. 409, 45 L. Ed. 586. Within the authorities, I think claims 1 and 2 sufficient and valid, read in connection with the specifications, as they must be, and that they are not for functions or results. Brush Electric Co. v. Electric Imp. Co. (C. C.) 52 Fed. 965, 974–976; Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863; Hobbs v. Beach, 180 U. S. 383, 400, 21 Sup. Ct. 409, 45 L. Ed. 586; Tilghman v. Proctor, 102 U. S. 707, 709, 26 L. Ed. 279.

It becomes a question, therefore, as to the breadth of the claims of the patent in suit. Are they to be construed strictly in accord with the specifications, and confined to the particular devices therein named and described, or are the complainants entitled to the benefit of the law of equivalents? I think it clear that the complainants are so entitled. I find no words that confine the patentee to the specific devices or mechanism described, and excluding equivalents. These claims are broad and valid as such, and are narrowed to the "apparatus," the "mechanism," and the "means" described in the specifications and their equivalents. Hence, in so far as the defendant has departed from the apparatus, etc., described, by the substitution of equivalents, it is an infringer. In so far as it has changed mere form and arrangement of parts, it has not thereby avoided infringement. If the defendant has adopted and used the principle and idea of the patent in suit, and also the general construction or means and mechanism, so that by substantially the same means operating in substantially the same way, all in the same combination, it obtains the same result, it is an infringer, even if something be added to its construction, its mechanism, and apparatus which is an improvement. It may have a patent for its improvement; but it cannot use the Corrington invention without license so to do. Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715; Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650; Hobbs v. Beach, 180 U. S. 383, 400, 401, 21 Sup. Ct. 409, 45 L. Ed. 586.

In Hobbs v. Beach, supra, 180 U. S. 400, 401, 21 Sup. Ct. 416, 45 L. Ed. 586, the court said:

"Without determining what particular meaning, if any, should be given to these words, we are of opinion that they are not to be construed as limiting the patentee to the exact mechanism described, but that he is still entitled to the benefit of the doctrine of equivalents, and that it is still true, as observed in Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 302, 32 L. Ed. 715, 'where an invention is one of a primary character, and the mechanical functions performed by the machines are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same results are infringements,' although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine. The Horton machine not only accomplishes the same result as the Beach device, but accomplishes it by the employment of the same combination of the same elements. The mere fact that the continuous strip is introduced between the dies from a different direction is immaterial. The fact that the Horton device contains no mechanism for turning the strip into the inside of the corner merely indicates that it does not perform all the functions of the Beach patent. But it is no less an infringement if it performs its primary function in practically the same way. We are not concerned with the subordinate differences in the mechanism, least of all with the different names given by Horton to parts of his machine similar to the corresponding parts in the Beach patent. As the two machines are alike in their functions, combination, and elements, it is unnecessary to go further and inquire whether they are alike or unlike in their details."

In Westinghouse v. Boyden Power Brake Co., 170 U. S., at pages 568, 569, 18 Sup. Ct., at pages 722, 723, 42 L. Ed. 1136, these principles are very plainly declared, viz.:

"'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650, 'involves substantial identity, whether that identity be described by the terms "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent."' We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there. As was said in Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650, an infringement 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are, therefore, mere equivalents for those of the other.'"

In defendant's alleged infringing combination it has added to one of the elements what may be called an intermediate cylinder having pistons and valves, and, of course, some added details of construction that go with it, and which are said to perform valuable and important func-

tions in certain cases and under certain conditions, but which do not change the mode of operation and results of the device as a whole. In no other respect is there substantial change that need be mentioned. That defendant's apparatus, taken as a whole, would fully anticipate the claims of the patent in suit, the invention claimed, if earlier, cannot be questioned. Defendant contends that it was earlier, and that anticipation based thereon should be found. This I have decided adversely to defendant's contention. I find no patent which anticipates. The Patent Office did not find any.

The record shows that Corrington's application was not loosely and hastily considered, and granted as a matter of course, or without due consideration of the prior art, or to get it out of the way. This is not, of course, much of an argument, but is a consideration of some value. The added pipes, valves, pistons, ports, etc., do not avoid infringement, unless they change the mode of operation of the combination considered as a whole. There may be added results also; but these do not avoid infringement, provided the result sought and obtained by Corrington is the main result sought by the defendant and obtained by the apparatus of defendant, containing substantially the same mechanism combined and operating in substantially the same way. Mere result or effect is not, however, the test of infringement, and the patentee of a prior invention is not entitled to every mechanical device which produces the same result. He must have mechanical means to produce that same result which operates in the same way, or substantially the same way. Burr v. Duryee. and Westinghouse v. Boyden Power Brake Co., supra. The claims are for combinations, and not for any one specific device or thing in the combinations, and in such case there must be an infringement of the combination. If infringement of each claim is alleged and relied on, there must be infringement of that combination. Rowell v. Lindsay, 113 U. S. 97, 101, 102, 5 Sup. Ct. 507, 28 L. Ed. 906; The Corn Planter, 23 Wall. 181, 224, 23 L. Ed. 161. In Rowell v. Lindsay, the court said:

"The patent being for a combination, there can be no infringement, unless the combination is infringed."

In Prouty v. Ruggles, 16 Pet. 336, 341, 10 L. Ed. 985, the court said:

"'This combination, composed of all the parts mentioned in the specification, and arranged with reference to each other and to other parts of the plough in the manner therein described, is stated to be the improvement, and is the thing patented. The use of any two of these parts only, or of two combined with a third, which is substantially different, in form or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination if it substantially differs from it in any of its parts. The jogging of the standard into the beam, and its extension backward from the bolt, are both treated by the plaintiffs as essential parts of their combination for the purpose of brace and draft. Consequently, the use of either alone, by the defendants, would not be the same improvement, nor infringe the patent of the plaintiffs.' This was quoted with approval in Rowell v. Lindsay, supra, and the court added: 'But this rule is subject to the qualification that a combination may be infringed when some of the elements are employed and for the others mechanical equivalents are used which were known to be such at the time when the patent was granted.'"

To infringe the combination, the defendant must use the elements thereof in combination, and all of them, or their equivalents, and the

combination must operate in substantially the same way to produce substantially the same result. In Rowell v. Lindsay, supra, the court said:

"For, where one patented combination is asserted to be an infringement of another, a device in one, to be the equivalent of a device in the other, must perform the same functions."

But this does not mean that where one part, or one element, of a combination, not only performs the same function or functions of the corresponding element in the patent, but some added function, which does not change the mode of operation of the entire combination, equivalency is not made out. The fact that a substituted element performs the same and also an additional function does not necessarily prevent its being an equivalent in the combination, or prevent the combination containing such substituted element being the equivalent of the combination of the patent in suit and alleged to be infringed by the former combination. To hold otherwise would enable persons to successfully infringe almost any combination patent by substituting an element in the combination of the patent which, without changing the combination, or its mode of operation, or the results obtained, in essentials, still performs some added function, which may be immaterial, or which may be an improvement. As said, when such change is made, if the added function is immaterial, infringement is not avoided, and if it be an improvement, and does not change the mode of operation, or principle of operation, while the improvement may be patentable, still infringement is not avoided.

I regard the changes in defendant's alleged infringing devices or combinations of this character. After a careful study of the evidence and structures and modes of operation, I reach the same conclusion from every standpoint. The defendant could not, of course, avoid the charge of infringement by merely obstructing the passage referred to, so long as he did not really impede the passage of pressure therethrough from the main reservoir to the brake cylinder. This defendant's devices do not do, when such pressure is allowed to flow. Adding a device at the point mentioned, which may be made to stop the flow of pressure, and which can be used to control or regulate, does not avoid the charge of infringement. It has been a lengthy and tedious task to wade through the mass of so-called expert testimony, covering more than 1,000 printed pages, much of which is mere argument and special pleading, and not at all explanatory, or a statement of opinions and the reasons therefor, and the able and voluminous briefs covering something like 300 printed pages. However, this court has done the best it could, and has arrived at the conclusion that the claims of the Corrington patent, No. 762,282, are valid and infringed by the defendant.

The burden of proving infringement is on the complainant; but, as stated, the burden of showing the invalidity of the claims, or of showing anticipation, prior use, etc., is on the defendant. In interpreting the claims the court should always incline to that construction which will uphold them. See, generally, Winans v. Denmead, 15 How. 330, 341, 14 L. Ed. 717. One of defendant's witnesses, more than once, in

substance, admits that defendant's devices infringe, if the broad claims are valid.

Much has been said in regard to cylinders, brake-cylinders, pressure chambers, and the like. It is noted that certain specific devices used in the various combinations, complainants' and defendant's, which answer the same purpose and perform the same functions in the combinations, are given different names. This is immaterial, as we are to look to what the thing does, not what it is named or called in the combination. Thus, whether a cylinder or chamber used to contain and store the pressure, and from which it is distributed or released for actual use in applying or releasing brakes, is called an auxiliary reservoir, a storage chamber, a distributing reservoir, or a pressure chamber, is immaterial, if used for one and the same purpose in all the combinations. So a patentee may use an inapt expression in his specifications; but if he tells truly the function, etc., of the thing mentioned, and describes it so that there is no uncertainty or ambiguity, his patent is to be treated the same as though his use of words had been the most select and apt possible.

I am constrained to hold that the claims of the patent in suit are valid and infringed, and there will be a decree accordingly, and for an injunction and an accounting, with costs.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes